## CROSLEY v. REYNOLDS.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1912.)

No. 2,199.

1. BILLS AND NOTES (§ 448*)—ACTION ON NOTE—DEFENSES—PLEADING.

A plea, in an action on a note, setting out contracts under which the note was given, showing that it was in part payment for an interest in the Russian rights in an invention which the parties were to go to Russia to exploit, with a proviso that in case the trip was not undertaken the notes should be surrendered, and which alleged that the trip was not made, and defendant demanded the return of the notes, held to sufficiently allege a failure of consideration which constituted a legal and not an equitable defense.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1330–1339; Dec. Dig. § 448.*]

2. EVIDENCE (§ 450*)—CONSTRUCTION—ADMISSIBILITY OF PAROL EVIDENCE.

Written contracts construed, and parol evidence held admissible to explain ambiguities therein.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 450.*]

3. TRIAL (§ 191*)—ACTIONS—INSTRUCTIONS.

Under the Michigan Negotiable Instruments Act (Pub. Acts 1905, No. 265), §§ 54, 61, which provides that a holder in due course is one who, when he acquired an instrument, had no notice of any infirmity therein or defect in the title of the person negotiating it, that the title of the person negotiating an instrument is defective when he negotiates it in breach of faith, and that, while every holder is deemed prima facie to be a holder in due course, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claimed acquired the title in due course, whether a note in suit by a purchaser was negotiated by the original payee in bad faith where put in issue is a question of fact for the jury, and an instruction which assumes that the burden rests on the plaintiff to prove himself a holder in due course is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

4. BILLS AND NOTES (§ 537*)—ACTIONS—QUESTIONS FOR JURY.

Evidence considered in an action on a note by a plaintiff claiming to be a holder in due course, and held to require the submission of such question to the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. § 537.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action at law by Charlotte W. Crosley against Mary H. Reynolds. Judgment for defendant, and plaintiff brings error. Reversed.

G. W. Radford, for plaintiff in error.
T. E. Barkworth, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges

KNAPPEN, Circuit Judge. The plaintiff in error sued upon a promissory note, negotiable in form, given by defendant to the order of D. L. Baumgarten, dated May 25, 1908, purporting to be made at Jackson, Mich., payable three months after date at a bank in that city. The note was in fact made at Chicago, Ill., on May 28th. The plaintiff claims to have bought the note at Cincinnati, Ohio, for value and in good faith, on June 4, 1908, and thus before maturity. The note is concededly a Michigan contract, and the rights of the parties are thus governed by the Negotiable Instruments Act of that state. The testimony is undisputed that the note in suit was made in connection with, and is one of those mentioned in, a written agreement between defendant and Baumgarten called "Exhibit A," made simultaneously with the note; the agreement (omitting signatures and formal parts) reading as follows:

"Whereas, the undersigned, David Louis Baumgarten, is the inventor of a certain device known as 'The Acme Sunlight Gas Generator,' and whereas, said Baumgarten is about to go to the Empire of Russia to exhibit said device and exploit same with a view to organizing a joint-stock company in said Empire of Russia, to take over said invention and manufacture same for sale in the whole Russian Empire upon such terms and conditions as may be satisfactory to said Baumgarten; and whereas, Mary H. Reynolds is desirous of obtaining a one-eighth interest in said invention and one-eighth of the proceeds or profits of said trip to Russia and aid in the promotion of said enterprise; and whereas, said Baumgarten is willing to sell to said Mary H. Reynolds a one-eighth interest in said invention: Now, therefore, be it known by these presents that for and in consideration of the sum of twelve thousand five hundred ($12,500.00) dollars in hand paid to me in the following manner, to wit, five hundred dollars in cash, and her promissory notes of even dates, payable three months after date for six thousand dollars each, twelve thousand dollars in all, the receipt of which is hereby acknowledged, I do hereby transfer and set over to said Mary H. Reynolds, her heirs and assigns, an undivided one-eighth interest in said invention, or the proceeds of sale of said one-eighth interest in Russia, upon the further condition that said Mary H. Reynolds will with others accompany said Baumgarten to Russia, and to the best of her ability assist said Baumgarten in the promotion of said company in said territory.

"Said Baumgarten agrees and binds himself to pay all the expenses of said Mary H. Reynolds to St. Petersburg, Russia, and back to Jackson, Michigan, and further agrees that before any money shall be drawn out of said enterprise the sum of twelve thousand and five hundred dollars shall be paid to said Mary H. Reynolds and constitute a first lien upon any moneys derived from said enterprise in said territory, and thereafter said Mary H. Reynolds shall receive one-eighth of all sums received from said enterprise. * * * It is understood that this contract and interest conveyed as above refers only and solely to business transacted in the Empire of Russia, and to no other territory or place."

It is also undisputed that in connection with the delivery of the notes by defendant, and the delivery to her of Exhibit A, Baumgarten

delivered to her his signed agreement, addressed to her and called "Exhibit B," the body of which reads:

"With reference to our contract and proposed trip to Russia, in case the trip is not undertaken, I agree to return all papers and notes upon your request."

Defendant testified, without dispute, but under objection for incompetency and otherwise, that she was reluctant to go into the enterprise, and that in connection with the making and delivery of the notes it was agreed that, if she did not wish to go to Russia, the notes were to be returned to her, and that "when that word was given" it was put in writing, Exhibit B being referred to as the writing, which defendant testified expressed her understanding about the return of the papers. Defendant testified, without dispute, that immediately after her return home from Chicago, and before June 1st, she notified Baumgarten that she had decided not to go to Russia, and demanded back her notes; that Baumgarten promised to return them; but that in spite of defendant's active efforts, even to the extent of following Baumgarten to New York, she failed to obtain the notes or get an interview with him. Baumgarten did not testify. Plaintiff's purchase of the note was made by her husband as her agent, and she is admittedly bound by whatever notice or knowledge the latter had. It is conceded that, before the note was bought, plaintiff's husband was shown Exhibit A; but it is denied that he had knowledge of Exhibit B, or of the agreement under which it is alleged to have been made, or of the alleged demand for the return of the notes. The issues thus presented were: First, the alleged lack of consideration of the note and its fraudulent negotiation after demand for its return; and, second, whether plaintiff became by her purchase a holder in due course. At the conclusion of the evidence plaintiff asked direction of verdict in her favor, which was denied. The issues stated were submitted to the jury under detailed instructions. Defendant had verdict. The errors assigned relate to the refusal to direct verdict for plaintiff, to instructions and refusals to instruct, including the interpretation and effect of the contract between defendant and Baumgarten, and to the admission of evidence.

[1] 1. Alleged equitable defense.

Plaintiff urges that the defense presented by the plea is purely equitable, and invokes the rule that equitable defenses to actions at law will not be recognized in the federal courts (Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991). We think, however, that the first notice attached to the plea (to which are annexed Exhibits A and B) sufficiently alleges a lack of consideration for the note, defendant's construction of the contract as above set forth, her election to abandon the trip to Russia, her demand of the notes and the refusal, the transfer to plaintiff in fraud of defendant's rights, plaintiff's notice of such failure of consideration and fraud, and her chargeability therewith. This we think sufficiently states a legal defense.

[2] 2. The interpretation of the contract.

The jury was instructed that "the contract in question upon its face conveys the information" that the note was dependent for its

validity upon defendant's joining Baumgarten in the trip to Russia; and that it not having been shown that this trip was undertaken, the defendant was entitled to have the notes returned to her under the terms of Exhibit A. If this instruction means that Exhibit A, independently of Exhibit B, or of the testimony of the defendant, is to be construed as stated in the instruction, and if the instruction is correct, the court would have been justified in directing a verdict for defendant; for it is admitted that plaintiff's agent was acquainted with Exhibit A before the note was purchased. In our opinion, Exhibit A, does not clearly and unambiguously provide that the note shall be void unless defendant should join with Baumgarten in the trip to Russia. We think Exhibit A, standing alone, susceptible of an interpretation that the notes and check were to be used in any event for the purposes of the enterprise, as a loan or advancement, though not in terms so characterized; that the $12,500 advanced by defendant was to "constitute a first lien upon any moneys derived from said enterprise," and was to be paid to her "before any money shall be drawn out of said enterprise," whether she went to Russia or not; and that the one-eighth interest in the invention as defined was to be given defendant upon condition that she join in the trip and take part in the promotion of the enterprise. We therefore think the construction adopted by the court was erroneous and compels a reversal of the judgment. Nor do we think that the language of Exhibit B, unaided by testimony as to the circumstances under which it was made and delivered, unequivocally declares that the notes were to·be returned in case defendant should not accompany Baumgarten to Russia. On its face and unexplained, it does not clearly exclude an interpretation that the notes were to be returned only in case the trip should not be undertaken by Baumgarten. On the other hand, the language of Exhibit B does not unambiguously limit the obligation to return the notes to the contingency of Baumgarten's failing to make the trip. The words "with reference to our contract and proposed trip to Russia" may well mean "with reference to our contract and *our* proposed trip to Russia," and, if so, the meaning would seem to be that the notes were to be returned if the *joint* trip was not undertaken. It seems a fair inference from defendant's testimony (although perhaps not expressly stated) that Exhibit B was drawn after Exhibit A had at least been drafted. In any event, Exhibit B presumptively was drawn because it was supposed to add something to Exhibit A. If Exhibit B is to be construed as requiring the return of the notes only in case Baumgarten should himself abandon the trip, it adds nothing to Exhibit A, unless by stating in express terms what would necessarily be implied from Exhibit A. We think it was both competent and relevant to show the circumstances under which Exhibit B was given, for the purpose of explaining the meaning of the contract.

[3] 3. The effect of the contract.

Accepting defendant's testimony as to the agreement, Baumgarten was under obligation to return the notes to defendant upon her demand of them and upon notice from her that she abandoned the enterprise, including the trip to Russia; and Baumgarten could not have

recovered upon the notes if defendant's testimony in this regard were accepted. Section 54 of the Michigan Negotiable Instruments Act (P. A. Mich. 1905, pp. 389, 397), declares that:

"A holder in due course is a holder who has taken the instrument under the following conditions: * * * Fourth, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 57 declares that:

"The title of a person who negotiates an instrument is defective within the meaning of this act when * * * he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

If, therefore, the testimony of defendant is accepted, the negotiation of the notes by Baumgarten, after notice by defendant of her abandonment of the trip to Russia and after demand upon him for, and his promise of, the return of the notes, was in "breach of faith," and "under such circumstances as amount to a fraud."

4. The burden of proof.

Section 61 of the Negotiable Instruments Act provides that:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claimed acquired the title as a holder in due course."

After stating plaintiff's claim that the note was purchased before maturity for value and without notice, the instruction was given that:

"Upon that issue, and upon the proof of the facts and circumstances which have been made by the defendant, as showing in what manner the note was procured, the burden of satisfying you that this was delivered in good faith, was acquired in good faith, and without notice of any infirmity therein, is upon the plaintiff in the cause."

We think the jury likely to understand this language as an instruction that the proof in the case was such as to throw the burden on the plaintiff of proving her acquisition of the note in good faith and without notice, rather than as leaving it to the jury to apply the rule as to the burden of proof according as the fact should be found respecting Baumgarten's right to negotiate the notes, and that the instruction was therefore erroneous.

[4] 5. The motion for directed verdict.

We think the case presented questions of fact for the determination of the jury. As already said, defendant's testimony supported a construction of the agreement entitling her to abandon the enterprise and thereupon to demand and receive the return of her notes. According to defendant's testimony, such abandonment was made, the notes demanded, and their return promised not only before Baumgarten's trip to Russia, but before the alleged negotiation of the note in suit. While the evidence on plaintiff's behalf, if accepted, shows her to be a holder in due course, and while there was no controversy over the delivery of the note to plaintiff's husband and payment therefor on June 4th, there was testimony from which the jury might properly reach a conclusion that plaintiff did not become a holder in due course under the statute. It appeared that about two months before the contract and

notes in question were made, plaintiff's husband (who was a lawyer), as Baumgarten's attorney and representative, opened active negotiations for the sale of the notes to be thereafter procured, and at a discount of $1,000, although the maker was regarded entirely responsible; that in such negotiations he suggested keeping from defendant's sons, who were in the banking business, knowledge of the proposed transaction, on the ground that they would be likely to oppose their mother's making the investment; that while no bonus was paid upon the alleged purchase of the note in suit, plaintiff paid but little more than half its face in cash, the balance being paid by the surrender of a note held by plaintiff against Baumgarten, together with an interest in certain gas machines; that after the purchase in question plaintiff's husband continued active and urgent efforts to sell both notes, two days after the purchase in question offering to the correspondent with whom negotiations had been opened before the notes were made a discount of $500 on one note or $1,000 on both, in a way consistent with Baumgarten's ownership of both notes. The proffered discount on the two notes was later increased to $1,250, and still later to $1,500. In some of the later correspondence reference is made to one of the notes as already discounted, subject to the prior rights of the correspondent mentioned.

In answer to the argument that plaintiff's husband would have been unlikely to invest his wife's money in the note if he had had notice of any infirmity in Baumgarten's right to negotiate it, it may be said that the evidence would support an inference that plaintiff's husband did not intend that she should permanently retain the note, but that her acquisition of it was intended to be temporary, and only until the final negotiation of both notes. In our opinion, it was open to the jury to conclude, upon the evidence as it stood, that Baumgarten's title to the note when transferred to plaintiff was defective within the Negotiable Instruments Act; thus throwing upon plaintiff the burden of showing that she became a holder in due course. And without setting out the evidence completely, we content ourselves with saying that we think there was evidence in the correspondence carried on by plaintiff's husband, both before and after the making of the notes, tending to show such close and confidential relations on his part toward Baumgarten, with respect to the note transactions, as to make it not unlikely that he should receive information respecting Baumgarten's right to negotiate the note sufficient to at least put him upon inquiry as to such right. That such inquiry, if duly prosecuted, would have disclosed Baumgarten's defective title, was open to inference. A question of fact was thus presented as to the character of plaintiff's holding.

We have not discussed all the errors assigned, as the questions raised by them are likely not to occur upon a new trial.

For the reasons stated, the judgment must be reversed, and a new trial ordered.