# SUPERIOR COURT OF BALTIMORE CITY.

Filed October 22, 1925.

THE BALTIMORE TRUST COMPANY
VS.
SAM OIDICK.

*Baldwin & Sappington* for plaintiff.
*H. Harry Rosenberg* and *Abram C. Joseph* for defendant.

FRANK, J.—

The verdict of the jury was for the plaintiff in the sum of $1,600.25. The substantial ground for the defendant's motion for a new trial is the suggested error in the rulings of the Court in excluding testimony tendered by the defendant as hereinafter stated. The action was upon a promissory note of the defendant to the order of Bernstein, Cohen & Co., which was the trade-name of Max Cohen, a private banker, and by that banker endorsed in blank and delivered to the plaintiff with other similarly endorsed notes as collateral security for a loan from the plaintiff to Bernstein, Cohen & Co. By special pleas the defendant controverted the authenticity of the endorsement of Bernstein, Cohen & Co.

The plaintiff as part of its case offered the testimony of several witnesses each of whom positively identified the endorsement as the genuine signature of Bernstein, Cohen & Co. The defendant offered no testimony controverting this, contenting himself with pointing out to the jury certain alleged discrepancies between the endorsement in question and other admitted signatures in evidence. Defendant's prayer imposing the burden of proving the genuineness of the endorsement upon the plaintiff was granted by the Court and the verdict of the jury established that it was in fact authentic.

*Inter alia*, defendant contends that the fact that the signature of the endorser was denied required the Court to admit the proffered testimony which was rejected.

The tender of the defendant was to prove as follows:

(a) That the defendant was a depositor with Bernstein, Cohen & Co. (R. 47-48);

(b) The circumstances under which the defendant borrowed from Bernstein, Cohen & Co. $2,500 on the note in suit (R. 48);

(c) Agreement by the defendant to maintain a balance in his account with Bernstein, Cohen & Co. (R. 48, 49);

(d) Amount of the defendant's balance with Bernstein, Cohen & Co.;

(1) At the time the latter ceased doing business;

(2) At the time of the trial;

(3) At the time the note sued on was executed; and

(4) At the time of its negotiation to the plaintiff (R. 49, 56, 57);

(e) Similar transactions between the defendant and Bernstein, Cohen & Co. prior to the note in suit (R. 49, 50);

(f) That Bernstein, Cohen & Co.'s assets were less than their liabilities;

(1) On the date of the making of the note in suit;

(2) On the date of its negotiation to the plaintiff; and

(3) On the date of Cohen's death (R. 51, 55, 62);

(g) That it is the usual practice for bankers in Baltimore City to require all borrowers to maintain a minimum balance (R. 58, 59); and

(h) That Witness Urban, formerly cashier and manager of Bernstein, Cohen & Co., told defendant not to pay the note in suit (R. 68, 69).

The tender (b) was couched in such general terms that it was impossible for the Court to determine that it was intended to include circumstances of "fraud, duress or force and fear, or other unlawful means" or that the note had been given "for an illegal consideration." Any such circumstances, if shown, would under Section 74, of Article 13, have rendered defective the title of Cohen when he came to negotiate the note to the plaintiff, and under Section 78, of Article 13, would have imposed on plaintiff the burden of proving that it acquired the note as a holder in due course. The defendant himself testified (R. 48) that he received $2,500 from Cohen on the note in suit, so that no question of the legality or sufficiency of the consideration is involved. The whole suggestion of the defendant at the trial was that the loan to him was made by Cohen on the condition that he, the defendant, maintain with Cohen a balance of at least 20 per cent. of the amount of the loan; that defendant from this assumed that in case of need he would have a set-off of this balance against Cohen and that the negotiation of the note by Cohen, while having liabilities in excess of his assets would deprive defendant of this set-off. The uncontradicted evidence shows that Cohen carried on business in the usual way from the date of the making of the note in suit (December 22, 1922) until the date of his death (February 7, 1925) the note having been negotiated to the plaintiff on January 14, 1925. It is impossible, therefore, from the question (b) to assume that it was intended to elicit facts such as would render the answer admissible under Section 74.

Let us assume, however, that in response to this question an answer had been made which under Section 78 would have shifted to the plaintiff the burden of proving that it acquired the note as a holder in due course. The plaintiff did not rest its case on any presumption that it was such a holder in due course. As a part of its case in chief, it offered evidence, which was uncontradicted, that it had acquired the note for value and prior to its maturity and under circumstances which gave it no notice of an infirmity in the instrument or defect in Cohen's title as defined by Section 75, of Article 13. No tender of testimony made or question asked by the defendant was capable of showing or eliciting any facts or circumstances tending to contradict this evidence of the plaintiff. As stated by Judge Urner in Edelen vs. First National Bank, 139 Md. 413 at page 419, "The effect of the transfer to the plaintiff of the burden of proof upon a question of this nature is to make it incumbent upon him to prove the circumstances under which he acquired the instrument upon which he seeks to recover. If the evidence thus offered is uncontradicted, and the proven circumstances do not admit of a rational inference of knowledge or bad faith on the part of the plaintiff, the Court may rightfully so instruct the jury. To adopt the contrary view would mean that in every suit by an indorser of a negotiable instrument, affected by some original infirmity, the question as to whether the plaintiff acted in bad faith would have to be submitted to a jury, no matter how conclusively his good faith may be proven by uncontradicted evidence." In the case cited, the evidence showed that the payee had obtained the note sued on from the defendant by an outrageous fraud, the endorsee bank showed the circumstances under which it obtained the note for value before maturity and the Court of Appeals held, this evidence being uncontradicted, that the jury had been properly instructed to bring in a verdict for the plaintiff.

I am of the opinion, therefore, that no error was committed by me in sustaining the objection to question (b).

Tender (f) was to show that Bernstein, Cohen & Co.'s assets were less than their liabilities from the time of the making of the note in suit until the discontinuance of the business upon Cohen's death. The uncontradicted evidence shows that during all this time the banking business was being regularly conducted, all indebtedness being paid as it matured and all demands being promptly met. Indeed, until Mr. Cohen's death nobody suspected anything but that he was a successful and prosperous banker. It is alleged that the transfer of defendant's note to plaintiff for value and before maturity upon these circumstances was to negotiate "it in breach of faith, or under such circumstances as amounts to a fraud." The breach of faith or fraud, if any, could only exist in the negotia-

tion of the note, in the face of the defendant's agreement to maintain a balance and so to deprive defendant of his right to a set-off of the amount of his deposit against the note sued on. I have been referred to no direct authority sustaining or refuting this contention. The following have been held to be such breaches of faith or fraud:

Negotiation of the note after notice from defendant of abandonment of the contract and a demand by him for the return of the note as stipulated in the contract.

Crosley vs. Reynolds (CCA 6th Cir.) 196 Fed. 640.

Negotiation of the note in breach of an express agreement that the maker was not to be liable thereon until security exhausted and then only for any deficiency.

Kennedy vs. Hungerford, 192 N. W. 959. (Neb.)

Negotiation of a note conditionally delivered, the condition not having been performed.

Home State Bank vs. Martin (Ia.) 195 N. W. 977.

Negotiation of note given in payment of stock to be delivered, where the stock was never delivered.

Glendon Bank vs. Abbott (Wyoming) 216 Pac. 700.

On the other hand, where defendant gave his note to the payee as consideration for the furnishing of water by a future date and the payee negotiated the note prior to that date and before breach it was held that payee's title was not defective within the meaning of Section 78, of Article 13.

Moyses vs. Bell (Wash.) 114 Pac. 193.

In my opinion, the facts as tendered do not make out a case of breach of faith or fraud under Section 74.

Assuming, however, that such breach of faith or fraud by Cohen is thus made out, the total effect will be to impose upon plaintiff the burden of showing that it is a holder in due course, and this burden, as already held by me, has been met by the uncontradicted evidence in the case.

Questions (a), (c), (d), (e) and (g) are intended to elicit answers showing that defendant was a depositor of Bernstein, Cohen & Co., had an agreement with his banker to maintain a balance in his deposit account with the banker and had a balance therein to his credit at all times between the giving of the note in suit and Cohen's death, had had similar previous transactions with Cohen and that it was a usual practice in Baltimore City for bankers to require borrowers to maintain a minimum balance. There is no offer to prove that Cohen agreed not to transfer the negotiable note in suit, but it is intimated that some sort of agreement to this effect should be implied from the agreement of the defendant to maintain a balance and that the plaintiff is to be charged with notice of the existence of this implied agreement from the existence of a general custom in Baltimore City to require borrowers to maintain minimum balances with the loaning bank. This situation would seem to fall far short of the notice defined by Section 75 of Article 13 as being "actual knowledge of the infirmity or defect or knowledge of such facts that his (the endorsee's) action in taking the instrument amounted to bad faith."

The rule is well established that even though the endorsee has knowledge of the terms of a contract which forms the consideration of the note, unless he was informed of the breach thereof prior to the negotiation of the instrument to him, such breach will not constitute a defense to his action upon the note.

Black vs. Bank of Westminster, 96 Md. 399, 418.

The utmost that is suggested in the case at bar is that Cohen exacted of the defendant an agreement to maintain a minimum balance and that the plaintiff had knowledge of a general custom in this city on the part of banks to require their borrowers to maintain minimum balances. Does this amount to an agreement on Cohen's part not to transfer the negotiable note? Certainly not so far as I can see. Nor can the knowledge of such a general custom amount to notice to the plaintiff of an agreement that did not exist. To hold to the contrary would obviously imperil the whole system of rediscounting their customers' notes with the Federal Reserve Banks by their constituent bank members, a system which is now at the very basis of the commercial banking credit sys-

tem of this country. I can see no good reason for making so radical a ruling.

Tender (h) is so clearly improper that no reference to it was made in the argument on the motion for a new trial and no further notice of it is necessary.

There remains then for consideration only the further question of the effect, if any, of the denial by the defendant of the genuineness of the endorsement by Bernstein, Cohen & Co. of the note sued on. If this endorsement were forged then the plaintiff could not recover because it could not establish any title to the note. This issue goes, therefore, not merely to the burden of proof as to the *bona fides* of the plaintiff's holding but to its very right to claim title in any degree. Does, therefore, the fact that the plaintiff's very title was thus disputed entitle the defendant to offer proof of equities claimed by him as against the plaintiff's endorser?

Either the endorsement was genuine or forged. If genuine the plaintiff was entitled to all the presumption heretofore discussed herein. If forged, then it did not own the note at all.

Article 13, Section 42.

The equities existing as between the defendant and his payee can throw no light upon this question, indeed could only tend to confuse the issue. If they were not relevant in the theory that the endorsement was genuine, they can have no pertinency to the question of forgery *vel non*. If the jury had found the signature forged, that would have terminated the case in favor of the defendant regardless of any question of any equities between defendant and Cohen. If, as the jury found, the endorsement was authentic, then as I have already held herein, they have no proper place in this case. The same reasoning applies to the offer to show the custom of requiring borrowers to maintain minimum balances. Assuming it to exist and that plaintiff knew it, what bearing can such a custom have on the question of the genuineness of the endorsement under which alone the plaintiff can or does claim?

In Commercial Security Co. vs. Jack, 29 N. D. 67, where the endorsee bank offered evidence showing that the note sued on was duly endorsed to it, the Court held that this fact did not impose upon the bank the burden of proving that it was a holder in due course. The two issues are entirely separate and distinct and have no legal relation to one another. Unless the note was duly endorsed no question of *bona fide* holder can possibly arise.

It is interesting to note that although Section 74 of the Uniform Negotiable Instruments Law (Art. 13), defines with care a defective title and Sections 75 to 78 prescribed the rights and burdens of a holder in due course, not one word is said with respect to the burden imposed upon one in possession of an instrument to which he has no title. The reason for this omission is clearly that such a person has no rights at all and it would be futile to discuss the burden upon him to establish any rights. (Art. 13, Sec. 42.)

The motion for a new trial is, therefore, overruled.