[No. 9089.  Department Two.  March 23, 1911.]

BEN MOYSES *et al.*, *Respondents*, v. CHARLES N. BELL, *Appellant.*[1]

BILLS AND NOTES—BONA FIDE HOLDERS—TITLE FROM—STATUTES. Under Rem. & Bal. Code, § 3449, providing that a holder of a note who derives title through a holder in due course, and is not a party to any fraud or illegality affecting the instrument, has all the rights of such former holder, a *bona fide* holder in due course can pass a good title after maturity, although there has since been a failure of consideration as between the original parties, to the knowledge of the last assignee.

[1]Reported in 114 Pac. 193.

SAME—BONA FIDE HOLDERS—WHO ARE—CONSIDERATION—EXECU-
TORY CONTRACT. A bank taking as collateral security a note given in
consideration of a perpetual water right, before maturity and before
any failure of consideration by default on the water contract, is a
holder in due course, as defined by Rem. & Bal. Code, § 3443.

SAME—TRANSFER—"DEFECTIVE" TITLE—STATUTES—CONSTRUCTION.
The title to a note, given in payment of a perpetual water right, is
not defective as defined by Rem. & Bal. Code, § 3446, where the
maker's signature was not obtained by fraud or unlawful means or
an illegal consideration and it was negotiated before its considera-
tion had failed.

SAME—BONA FIDE HOLDERS—BURDEN OF PROOF. Under Rem. &
Bal. Code, § 3450, where the title to a note is not defective, the
burden can never be upon the holder of a note to show·that he is a
holder in due course.

BILLS AND NOTES—CONSIDERATION—FAILURE. A note given in con-
sideration of an agreement to convey and furnish water to land on
or before a certain date is based upon a valuable consideration,
and there can be no failure of consideration until breach of the
contract.

SAME—BONA FIDE HOLDER — CONSIDERATION—FAILURE—NOTICE.
The transferee of a note is not deprived of his character as *bona fide*
holder in due course by knowledge that it was given in consideration
of an executory contract, where he had no notice of any breach of
the contract at the time the same was transferred to him.

BILLS AND NOTES—NEGOTIABILITY—RESTRICTIONS. A contract not
to negotiate a note to banks in the city of S., where the maker deals
or is acquainted, indicates an assent that it may be otherwise ne-
gotiated.

MARSHALING ASSETS — SUBROGATION — APPEAL — DECISION—QUES-
TIONS NOT PRESENTED BELOW. Where the consideration for a note has
failed, but the same is in the hands of a holder in due course as
collateral security, the supreme court will not direct that the holder
first exhaust its other security and order a subrogation, where such
issue was not tried out in the court below and the rights of a receiver
and other creditors similarly situated might be affected.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered February 21, 1910, upon find-
ings in favor of the plaintiffs, after a trial on the merits be-
fore the court without a jury, in an action on a promissory
note. Affirmed.

*Peters & Powell*, for appellant.

*Richard Saxe Jones*, for respondents.

CROW, J.—Action by Ben Moyses and Charles B. Smith against Charles N. Bell, to recover principal and interest alleged to be due upon a promissory note. On trial without a jury, judgment was entered in plaintiffs' favor, from which the defendant has appealed.

The note reads as follows:

"$3200          Mountain Home, Idaho, February 7th, 1908.

"On or before one year after date I promise to pay to the order of the Great Western Beet Sugar Company thirty-two hundred & 00-100 dollars. Value received. Interest . . . . per cent.

"Due February 7, 1909.            Chas. N. Bell."

The respondents alleged they were holders in due course. The appellant admitted the execution of the note, denied that respondents were holders in due course, and affirmatively pleaded that the note was executed and delivered to the Great Western Beet Sugar Company, a corporation, in part payment for a perpetual water right for the irrigation of 320 acres of land in Elmore county, Idaho; that the water was to be furnished in stipulated quantities on April 15, 1908, and at all times thereafter during irrigation seasons; that the payee failed to furnish the water on April 15, 1908, or at all; that the payee, being hopelessly insolvent, is in process of liquidation, and that these facts were all known to respondents when they acquired the note.

Appellant's contention, in substance, is that the consideration for the note has failed; that it was transferred to respondents after its maturity and after such failure; that the payee's title was defective, and that respondents, not being holders in due course, cannot recover. The evidence was sufficient to show that the Great Western Beet Sugar Company was constructing an irrigation system in Idaho; that on February 7, 1908, it entered into a written contract with appel-

lant, whereby, in consideration of $9,600, it sold him a perpetual water right for the 320 acres of land; that this contract recited the fact that the company had executed its warranty deed conveying the water right, the same to be placed in escrow with the Citizens State Bank of Mountain Home, Idaho, together with a copy of the contract itself; that the bank was instructed to surrender the deed to appellant upon payment of the note; that the company was to deliver water to appellant's land after April 15, 1908, in quantities stipulated; that appellant paid $6,400 in cash, and at the same time made and executed the note for the remainder of the purchase price; that the contract contained the following stipulation:

"Said party of the first part [the company] agrees that said promissory note shall not be sold, discounted or offered for sale to any banking or mercantile institution in the city of Seattle where the second party [appellant] deals or is acquainted:"

that on or about February 8, 1908, the Great Western Beet Sugar Company, being indebted to the Citizens State Bank of Mountain Home, Idaho, then delivered appellant's note and other notes to the bank, as collateral security; that the company did not furnish water to appellant on April 15, 1908, or at any time thereafter; that there was a total failure of consideration for the note, at all times after April 15, 1908; that early in October, 1908, respondents Moyses and Smith went from Seattle, Washington, to Mountain Home, Idaho, to investigate the Great Western Beet Sugar Company and purchase a controlling interest in its capital stock; that for two or three weeks they made an examination of its property and affairs; that about the same time they personally agreed to purchase and take over from the bank the indebtedness of the Great Western Beet Sugar Company, together with an assignment of the collateral security, including appellant's note; that in pursuance of this agreement they paid the bank $14,000 on October 28, 1908; that on February 10,

1909, three days after the maturity of the note, respondents took over the remainder of the debt and the collateral notes from the bank, then paying for that purpose the additional sum of about $25,000; that the face value of the collateral notes then held by the bank and transferred to respondents was about $80,000, but no evidence was offered as to their actual value.

The appellant, citing *Kost v. Bender*, 25 Mich. 515, and other cases, insists that the collateral, including his note, was returned to the original payee, the Great Western Beet Sugar Company, which again acquired title thereto after maturity, on February 10, 1909; that the payee then assigned the note to respondents as collateral security for a new indebtedness from it to respondents then created, and that respondents, having actual notice of the failure of consideration, then acquired the note, subject to appellant's right to make his defense. We do not think the contention that the note was returned to the payee, or that it again acquired title thereto, can be sustained. The evidence on this subject supports the respondents' position, to the effect that they purchased the existing debt of the company, and took an assignment of the collateral. Assuming, without so finding, that after looking into the affairs of the company for a period of two or three weeks in October, 1908, respondents learned facts sufficient to inform them that the Great Western Beet Sugar Company had then failed to perform its executory contract with appellant, they would nevertheless, under Rem. & Bal. Code, § 3449, have all the rights of holders in due course, if the bank, their assignor, was itself a holder in due course. The section mentioned reads as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

This section is only a statutory enactment of a rule theretofore announced by the courts. It is recognized in *Kost v. Bender, supra,* cited by appellant, as a rule existing in favor of all persons other than the original payee, who become purchasers from a *bona fide* holder of negotiable paper, even though such purchasers have notice of an infirmity in the paper, as between the original parties thereto. Speaking for the court, Cooley, J., said:

"It is perfectly true as a general rule, that the *bona fide* holder of negotiable paper has a right to sell the same, with all the rights and equities attaching to it in his own hands, to whoever may see fit to buy of him, whether such purchaser was aware of the original infirmity or not. Without this right he would not have the full protection which the law merchant designs to afford him, and negotiable paper would cease to be a safe and reliable medium for the exchanges of commerce. For if one can stop the negotiability of paper against which there is no defense, by giving notice that a defense once existed while it was held by another, it is obvious that an important element in its value is at once taken away."

Section 3443, Rem. & Bal. Code, thus defines a holder in due course:

"A holder in due course is a holder who has taken the instrument under the following conditions:—

"(1)   That it is complete and regular upon its face;

"(2)   That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3)   That he took it in good faith and for value;

"(4)   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 3450 reads as follows:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on 'the holder to prove that he or some person under whom he claims acquired the title as holder in due course. . . ."

Our inquiry therefore is, whether the bank from which respondents acquired title was a holder in due course. It is shown by the undisputed evidence of S. G. Yerkes and B. L. Williams that the note was assigned to the bank on or about February 8, 1908. Section 3446 thus defines a defective title:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

The payee did not obtain this note or appellant's signature thereto by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration; nor can we find from all the evidence that, when it negotiated the note to the bank on February 8, 1908, before its consideration had failed, such negotiation was a breach of faith, or made under such circumstances as amounted to a fraud. If we are correct in this conclusion, the title of the payee was not defective when it negotiated the note to the bank, and under § 3450, *supra*, no burden could ever be imposed upon the bank, or upon respondents as its assignees, to show that they were holders in due course; and this would be true even though respondents, the assignees of the bank, acquired the note after its maturity, and with notice that there had been a failure of its consideration at all times after April 15, 1908, occasioned by the payee's failure to perform its executory contract to thereafter furnish water.

Our findings are that the note was originally given for the company's agreement to convey the right and furnish water on and after April 15, 1908. This was a valuable consideration. No failure of such consideration could possibly occur until after that date. The bank held the note for more than two months prior to any such failure. The courts have repeatedly held that knowledge by an endorsee of a note that it

had been given in consideration of some executory contract
or agreement of the payee, which the payee afterwards fails
to perform, will not deprive the endorsee of his character of a
*bona fide* holder in due course, unless prior to its assignment
to him he had notice of the breach of the executory contract,
and that such breach had theretofore occurred. *Rublee v.
Davis*, 33 Neb. 779, 51 N. W. 135, 29 Am. St. 509; *Miller
v. Ottaway*, 81 Mich. 196, 45 N. W. 665, 21 Am. St. 513,
8 L. R. A. 428; *Davis v. McCready*, 17 N. Y. 230, 72 Am.
Dec. 461; *Jennings v. Todd*, 118 Mo. 296, 24 S. W. 148, 40
Am. St. 373; *Maas v. Chatfield*, 90 N. Y. 303; *Tradesmen's
Nat. Bank v. Curtis*, 167 N. Y. 794, 60 N. E. 429, 52 L. R. A.
430. The deed and contract for the water right were placed
in escrow with the bank. Assuming this fact was sufficient to
give it notice of the consideration for which the note was
given, yet under the above authorities the bank was a holder
in due course for value, having obtained the note long prior
to the company's breach of its executory contract. In *Maas
v. Chatfield, supra*, a note dated November 24, 1878, matur-
ing in four months, was given in payment for salted hides
sold to the maker by the payee, which were to be delivered
December 20, 1878, prior to the maturity of the note. In
an action against the maker by an endorsee, the court said:

"He [the defendant] says, if the hides had been delivered,
he should have paid the note. The sale and promise to deliver
was not less a consideration than the actual delivery would
have been. But applying his argument to the memorandum
as part of the contract, the appellant contends that the note
was made upon the 'agreement of Rosenbach & Co. to deliver
the hides on December 20, or pay the note on that day.' If
this is so, it would not within the rule above stated, relieve the
defendant. The condition was not to be performed until
December 20, so that from November 27, to that time, it was
a good and valid note, even in the payees' hands. The maker
could not have reclaimed it. If it matured before December
20, the payees could have enforced payment. As it was, they
had the legal title and the power of disposition. It was ne-
gotiable by its terms, and was in fact sold for value and trans-

ferred to the plaintiff on the day it was given. A subsequent violation of the agreement on which it then stood would not vitiate the note, or subject it to a defense good only against one for which no consideration had been given."

The contract between appellant and the Great Western Beet Sugar Company imposed an express limitation upon the payee's right to negotiate the note, to the extent only that it should not be negotiated to certain parties in Seattle. This would seem to indicate an assent of the appellants to its negotiation to other parties or elsewhere. In giving the note appellant thus relied upon the financial responsibility and integrity of the payee for its fulfillment of the contract. The following observations of the supreme court of Missouri, in *Jennings v. Todd, supra,* are pertinent:

"A great part of the improvement of the country, and of business generally, is carried on with money raised by the discount of notes given upon executory contracts, and if the maker could be allowed to defend against such notes, in case of a breach of contract, on the ground that the indorsee, though in other respects *bona fide,* had knowledge of the transaction out of which the note grew, all confidence in such notes as negotiable paper would be destroyed and such business would be paralyzed. By making and delivering a negotiable note, the maker is held to intend that it may be put in circulation and that no defenses against it exist. In purchasing such note no inquiry as to the consideration is required. If a failure of consideration occur, the maker must look to the payee for indemnity."

In *Miller v. Ottaway, supra,* the supreme court of Michigan, after citing authorities, said:

"From the foregoing authorities, and upon reason, the correct doctrine appears to be that it is not a good ground of defense against a *bona fide holder* for value that he was informed that the note was made in consideration of an executory contract, unless he was also informed of its breach. If he had knowledge of the breach, the defense may be interposed. . . . A mere collateral agreement or warranty made at the time the note was given does not affect the validity or nego-

tiability of the note, although the purchaser before maturity may know of such agreement."

On the facts proven and the authorities cited, we conclude that the bank was a holder in due course, and that the respondents, having derived title from the bank and not being parties to any fraud or illegality affecting the note itself, have, under § 3449, *supra*, succeeded to all rights of the bank as its assignee.

Appellant, asking the equitable relief that respondents be required to first exhaust other collateral, or that he be subrogated thereto, in his answer alleged:

"That as this defendant is informed and verily believes, the plaintiffs acquired the note sued upon, if at all, as collateral security to another and principal obligation of the Great Western Beet Sugar Company and along with a large amount of other collateral and securities, the amount or value of which to this defendant is unknown but which he alleges is largely in excess of the consideration paid by him for said principal obligation, if any was so paid, and also largely in excess of said principal obligation or note."

There was evidence that collateral of the par value of $80,000 was transferred to respondents by the bank when they succeeded to its rights, but there is no evidence of the actual value of such collateral. The appellant did not urge this defense on the trial below although pleaded, nor did he ask findings relative thereto. It appears that the Great Western Beet Sugar Company has passed into the hands of a receiver. After respondents have fully satisfied the debt due them from the Great Western Beet Sugar Company by collecting and applying the proceeds of the collateral, the remainder of such collateral, if any, will belong to the company, or its receiver. The appellant insists that we should now make an order of subrogation so that he may be enabled to look directly to any surplus collateral now held by respondents, which they may not need to secure the entire indebtedness due them; but in view of the rights of the receiver,

and of other possible creditors who might also be entitled to subrogation and to participate in the same collateral, we think no such order should be made in this action.

The judgment is affirmed.

MORRIS and CHADWICK, JJ., concur.