FIRST NATIONAL BANK OF BUFFALO, a Corporation, Respondent, v. F. V. WALLACE, Appellant.

(196 N. W. 303.)

**Bills and notes — note without legal existence until delivered in accordance with intentions of parties; proper to show as between parties and others having notice that delivery of note was on condition not fulfilled.**

1. A promissory note has no legal or valid existence until it has been deliv-

---

Note.—(1) Admissibility of parol evidence to show that bill or note was delivered upon condition, see notes in 43 L.R.A. 480; 18 L.R.A.(N.S.) 288; L.R.A.1917C, 306; 20 A.L.R. 424; 3 R. C. L. 863; 1 R. C. L. Supp. 906.

(6) Cross-examination of witness called to testify on particular point or under order of court, see note in 7 A.L.R. 1116; 28 R. C. L. 604; 3 R. C. L. Supp. 1585; 5 R. C. L. Supp. 1547.

ered in accordance with the intention of the parties and it is proper, in support of an allegation denying its execution, to show, as between the parties to it or others having notice, that the manual delivery of the note to the payee was upon a condition which was in fact never fulfilled or performed.

**Bills and notes — delivery of note held unconditional.**

2. Where a stipulation in a contract, for the purchase and sale of corporate stock, which agreement also appoints one of the parties as agent in a given territory to sell machinery, is that "This contract may be cancelled by either party upon ninety days' written notice to the other, and it is further understood and agreed that in the event of the cancellation of this contract by either party to this contract within one year from this date, that the party of the first part agrees to refund to the party of the second part the purchase price of the above shares subscribed to and paid for by the party of the second part within ninety days after the cancellation of this contract and upon surrender by the party of the second part of his stock certificate for the within number of shares," and when a negotiable promissory note is given for the purchase price of such stock, it is *held* that the payee may negotiate the note before maturity and that its obligation under the agreement, in the event of cancellation of the note, is to repay the maker the face value of the note with interest up to the time when it is payable, and not necessarily to return the identical note.

**Bills and notes — presumption that holder of note is one in due course not met by denial of ownership; presumption that holder of note is one in due course not rebutted by denial nor rebutted by allegations of equities.**

3. The presumption, declared by the statute, § 6944, Comp. Laws 1913 (59) that a holder of a note is a holder in due course as defined in § 6937, Comp. Laws 1913 (51) is not met by a denial in the answer of the ownership of the note by the plaintiff. Neither is the presumption rebutted by an allegation in the answer that the plaintiff is not a holder for value, in due course, and before maturity. Notwithstanding such allegations in the answer, plaintiff's prima facie case is established by proof of execution and the endorsement of the note, before maturity, to him. The presumption is not rebutted so as to put the plaintiff upon proof of his *bona fides* in acquiring the note, by allegations of equities in the answer; there must be both allegation and proof in support thereof.

**Words and phrases — "Refund" defined.**

4. "Refund" means to give back; to restore; to repay.

**Principal and agent — evidence held sufficient to establish authority of agent of payee to transfer note.**

5. Authority of the agent of the payee to transfer the note in suit by endorsement, *held*, for reasons stated in the opinion, to have been proved by com-

petent evidence and the court properly admitted the note, with the endorse-
ment, in evidence.

**Witnesses — cross-examination as to matters not opened in examination in chief not proper.**

6. It is not error to sustain objections to cross-examination on the ground that the matters inquired into were not opened or touched on in the examination in chief.

**Instructions — that amount paid for note immaterial to recovery held proper.**

7. Certain instructions examined and *held*, for reasons stated in the opinion, to correctly state the law.

Opinion filed November 9, 1923.

Agency, 2 C. J. §§ 114 p. 493 n. 55; 727 p. 956 n. 86. Appeal and Error, 4 C. J. § 2955 p. 975 n. 88. Bills and Notes, 8 C. J. §§ 328 p. 197 n. 4; 334 p. 203 n. 73; 336 p. 206 n. 17; 1260 p. 963 n. 48; 1291 p. 983 n. 43 New. Refund, 34 Cyc. p. 1012 n. 5. Trial, 38 Cyc. p. 1777 n. 65. Witnesses, 40 Cyc. p. 2501 n. 94.

Appeal from judgment of the District Court of Cass County, *Cole,* J. Affirmed.

*W. J. Courtney,* for appellant.

*Fowler, Green & Wattam,* for respondent.

JOHNSON, J.   This is an appeal from a judgment against the defendant, entered upon the verdict of a jury in the District Court of Cass county.

The plaintiff brought suit against the defendant upon a promissory note, dated December 3, 1919, payable one year after date to the Grain Belt Manufacturing Company, in the sum of $875. The complaint is in the usual form. In addition to alleging the foregoing facts, it is alleged that the note was, before maturity, negotiated to the plaintiff and that the plaintiff, at the time the suit was commenced, was the owner and holder thereof in good faith and for value, without knowledge of any defenses. The answer admits the execution of a note similar to the one described in the complaint, but alleges the note was delivered conditionally to the payee named therein; that when the note was executed, a contract was entered into between the maker and the payee, which contained, among other things, a stipulation that all

notes and money would be returned to the maker if he exercised the option, given him under the contract, to cancel the same; that the defendant served a notice of cancellation within the time stipulated in the contract, and demanded that the note be returned. It is further alleged that the plaintiff herein had knowledge of the facts and circumstances and of the contract and the stipulation therein that the note and money would be returned in the event the defendant exercised the option to cancel the contract. It is denied that the note was purchased for value before maturity or that the plaintiff is a bona fide holder thereof without notice.

At the trial, the plaintiff called the defendant for cross-examination under the statute and proved the execution of the note. The cashier of the plaintiff was then sworn and testified, in substance, that the plaintiff purchased the note described in the complaint on December 4, 1919, from an agent of the Grain Belt Mfg. Co., the payee therein, and paid for the said note by issuing a certificate of deposit to the payee in the sum of $857.50, payable twelve months after date, with interest at the rate of 5 per cent per annum; that, before the plaintiff purchased the note and issued the certificate of deposit aforesaid, the agent of the Grain Belt Manufacturing Company exhibited to him a document, known in this case as Plaintiff's Exhibit 4, in the following form:

"To whom it may concern:

"The bearer, William Crowley, is a duly authorized representative of the Grain Belt Mfg. Co. of Fargo, North Dakota, and as such is authorized to discount and endorse notes made payable to the above company. All payments to be made payable to the Grain Belt Mfg. Co.

"Yours very truly,

"By ————————————

"By ————————————                    "Treasurer.

"President."

That, at the time, he talked with Mr. McHose, who was treasurer of the payee, over the telephone, and was advised by him that Mr. Crowley had full authority to endorse and transfer the note in suit; that, thereafter and when the certificate of deposit, which had theretofore been negotiated, matured, it was paid by the plaintiff by a draft,

identified in the record as Plaintiff's Exhibit 3. The plaintiff next called Mr. J. W. McHose, the treasurer of the payee, who testified that the payee, prior to December 3, 1919, executed the original Exhibit 4, and that he, as treasurer, and W. D. Prentiss, as president, executed such instrument in behalf of the corporation, and that the original was delivered to William Crowley. Mr. McHose testified that the original of Exhibit 4 was "undoubtedly in Mr. Crowley's possession." On cross-examination by defendant's counsel, Mr. McHose stated that written authority, as evidenced by Exhibit 4, had been given to William Crowley to endorse and transfer the note, prior to December 3, 1919. Defendant's counsel asked the following question: "So that whenever he took the notes, if he could find a purchaser, he had authority to sell them?" A. "Yes." The whereabouts of Mr. Crowley was not known at the trial. The plaintiff thereupon offered in evidence Exhibits 1, 2, 3 and 4, being the note in suit, the certificate of deposit issued in payment thereof, the draft by which the certificate of deposit was paid, and a copy of the written authority to William Crowley to endorse and transfer notes payable to the corporation. Plaintiff then rested.

The appellant predicates error upon the rulings of the trial court admitting Plaintiff's Exhibits 1, 2, 3 and 4. The foundation of the objection is the contention that William Crowley did not have authority to endorse the note and transfer it to the plaintiff. As has been pointed out, a copy of the written authorization, duly identified by the treasurer of the payee corporation, was introduced in evidence and the cashier of the plaintiff testified that upon being shown this evidence of authority he purchased the note for the plaintiff. Under the evidence in the case, the authority of the agent, William Crowley, to transfer the note in suit by endorsement, was established by competent written evidence It is true that the cashier was permitted to testify, over objection, that before he purchased the note he talked over the telephone with an officer of the payee and was advised that Crowley had authority to transfer the note by endorsement. It is contended that this was hearsay. Granting that this testimony was inadmissible to prove authority, nevertheless, permitting the witness to testify was error without prejudice, because the fact was established a few moments later by competent written evidence by the same witness.

The defendant took the witness stand in his own behalf and his

counsel sought to introduce the contract referred to in the answer, identified in the record as Exhibit 100, together with Exhibit 101, which is a copy of a letter dated October 21, 1920, addressed to the Grain Belt Manufacturing Company, notifying that corporation that the contract, Exhibit 100, was thereby cancelled and asking that the note in suit and executed at the time the contract was made be returned; also, Exhibit 102, which is a letter from the Grain Belt Manufacturing Company acknowledging receipt of Exhibit 101; also, Exhibit 103, which is the return registry receipt, dated October 21, 1920, showing that the letter, marked Defendant's Exhibit 101, was received by the Grain Belt Manufacturing Company on October 21, 1920. The court excluded this evidence.

The defendant, after the court refused to receive his Exhibits 100, 101, 102 and 103 in evidence, offered to prove that the cashier of the plaintiff knew of the contract and the conditions under which the contract could be cancelled, "and knew, on the day that he purchased this note, that the said contract, referred to as Defendant's Exhibit 100, had been cancelled." This offer was excluded and defendant then rested.

We think counsel clearly, though doubtless in good faith, misinterpreted his own evidence, in so far as the portion of his offer above quoted is concerned. Defendant's own record evidence, offered at the trial, shows that he did not rescind until October 21, 1920, whereas the note was negotiated to the plaintiff December 4, 1919, the day after it was made. Upon the record before us, therefore, it is clear that the plaintiff could not have had knowledge of a cancellation that did not take place until ten months later.

The paragraph in the contract, Exhibit 100, principally relied on by the appellant, reads as follows: "This contract may be cancelled by either party upon ninety days written notice to the other, and it is further understood and agreed that in the event of the cancellation of this contract by either party to this contract within one year from this date, that the party of the first part (Grain Belt Manufacturing Company) agrees to refund to the party of the second part the purchase price of the above shares subscribed to and paid for by the party of the second part within ninety days after the cancellation of this contract and upon surrender by the party of the second part of his stock certifi-

cate for the within number of shares." It is upon this stipulation, towit, that the purchase price of the shares will be "refunded" if the contract is cancelled, that the defendant bases his contention that the note in suit was delivered conditionally and that, upon cancellation of the contract, he had a right to demand that the note be returned to him. A promissory note has no legal or valid existence until it has been delivered in accordance with the intention of the parties and it is proper, in support of an allegation denying its execution, to show, as between the parties to it or others having notice, that the manual delivery of the note to the payee was upon a condition which was in fact never fulfilled or performed. Comp. Laws 1913, § 6901, Neg. Inst. Act, § 16; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044; Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Farmers' Bank v. Nichols, 25 Okla. 547, 138 Am. St. Rep. 931, 106 Pac. 834, 21 Ann. Cas. 1160; First Nat. Bank v. Miller, 46 N. D. 551, 179 N. W. 998.

We have examined Defendant's Exhibit 100, and come to the conclusion that counsel's interpretation thereof is wholly untenable; that the undertaking of the Grain Belt Manufacturing Company was not to return the note in suit or to refrain from negotiating the same, in the event the payee elected to cancel the contract, but to repay the purchase price. The word "refund" is used. We have not been able to find that the meaning of this word has been judicially defined under circumstances identical with the facts in this case.

In the case of Farmers' Bank v. Nichols, 25 Okla. 547, 138 Am. St. Rep. 931, 106 Pac. 834, 21 Ann. Cas. 1160, however, the facts are very similar and the court there held that the word "refund" meant, not a return of the note in suit, but a repayment of the amount of the note in cash, in case the note had been negotiated. In that case, it is true, the agreement was somewhat different, in this, that, while Carter agreed "to refund note given," there was, later in the agreement, a stipulation that, if the policy should be found unsatisfactory or not as represented, "the note for $438.20, or the amount in cash, $438.20, shall be refunded to the said I. D. Nichols." It appears from the opinion, however, that, had the option clause last above quoted not been in the contract, the decision of the court would have been the same. The term "refund" undoubtedly, in common parlance, means "to give back;

to repay; to restore." Web. Dict. In the case at bar, the note was negotiated the day after it was made; we think that the agreement contemplated that the payee should have the right to negotiate the note forthwith and to make the purchase price available immediately in its business, but that, in the event the maker elected to cancel the contract, the payee was obligated to restore or return to the maker the purchase price, that is to say, the face of the note with interest.

Our conclusion, with respect to the interpretation of the contract, disposes of the errors alleged by the appellant, based upon the exclusion of Exhibits 100, 101, 102 and 103. These exhibits were wholly irrelevant and immaterial and did not tend to show a defense to the note, even if plaintiff had full knowledge of the contract (Exhibit 100) and its terms. It bought the note, for value, before maturity and before defendant cancelled the contract.

The presumption, declared by the statute, § 6944, Comp. Laws 1913 (59 Neg. Inst. Act) that a holder of a note is a holder in due course as defined in § 6937, Comp. Laws 1913, (51) is not met by a denial in the answer of the ownership of the note by the plaintiff. Gulf Steel Co. v. Ford, 173 N. C. 195, 91 S. E. 844. Neither is the presumption rebutted by an allegation in the answer that the plaintiff is not a holder for value, in due course, and before maturity. Notwithstanding such allegations in the answer, plaintiff's prima facie case is established by proof of execution and the endorsement of the note, before maturity, to him. Holdsworth v. Anderson Drug Co. 118 Va. 359, 87 S. E. 565. The presumption is not rebutted so as to put the plaintiff upon proof of his *bona fides* in acquiring the note, by allegations of equities in the answer; there must be both allegation and proof in support thereof. There is no evidence or offer of proof tending to show that the title of the payee was defective within the meaning of § 6940, Comp. Laws 1913. No duty, therefore, was imposed on the plaintiff to go further than to prove the facts which raise the presumption that it was a holder in due course. There is no evidence or offer of proof that the payee procured the note by fraud, duress, force or fear, or unlawful means, or for an illegal consideration, or that the note was negotiated in breach of faith or under circumstances amounting to fraud. § 6940, supra. Under the circumstances detailed in the record, it was the duty of the defendant to rebut this presumption by

competent proof or offer thereof. In this respect he has wholly failed. Commercial Secur. Co. v. Jack, 29 N. D. 67, 150 N. W. 460.

In our view of the contract, no restriction is put upon the right of the payee to negotiate the note. The maker, in view of the contract he made, must be held to have relied upon the responsibility and integrity of the payee to repay the purchase price in the event that the maker exercised his option to cancel the contract. The note is dated December 3, 1919, due one year thereafter. It was negotiated to plaintiff on the day after it was made and value paid therefor. No condition had then been broken; the option to rescind was not exercised until more than ten months later. The note was negotiable in form. It is true, a contingency might arise in the future which would give the maker the right, either to resist successfully a suit by the payee to enforce collection of the note, or a cause of action against the payee for the recovery of the purchase price of the stock. The transaction is not new or novel in a developing country. It is apprehended that if the endorsees of notes given upon executory contracts cannot be holders in due course simply because they know the facts and that under such contracts the consideration might wholly or partly fail, business development, that must come if at all, with funds procured through the discount of such paper, will be materially retarded. If conditions occur, subsequent to the execution of the instrument, that give rise to equities in favor of the maker and against the payee, the rule seems to be that the maker's remedy is against the payee. A collateral agreement that a note shall not be paid if an executory contract forming the consideration thereof is not performed, does not affect the rights of an endorsee with notice of the agreement so as to deprive him of the character of a holder in due course, unless a breach of the agreement has occurred and he knows of such breach at the time of his purchase. Jennings v. Todd, 118 Mo. 296, 40 Am. St. Rep. 373, 24 S. W. 148; Miller v. Ottaway, 81 Mich. 196, 8 L.R.A. 428, 21 Am. St. Rep. 513, 45 N. W. 665; McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 125 Am. St. Rep. 265, 113 N. W. 858, 15 Ann. Cas. 665; A. Marx & Sons v. Frey, 137 La. 948, 69 So. 757; Security Trust & Sav. Bank v. Gleichmann, 50 Okla. 441, L.R.A.1915F, 1203, 150 Pac. 908; Moyses v. Bell, 62 Wash. 534, 114 Pac. 193; Hakes v. Thayer, 165 Mich. 478, 131 N. W. 174.

The endorsee may properly assume that the payee will perform his contract and reimburse the maker according to its terms. When plaintiff purchased the note, assuming that it knew of the contract and the option to rescind, it did not and could not know whether the option would ever be exercised. If the plaintiff be charged with knowledge of the option clause in the contract, it knew also that the payee promised to "refund the purchase price." Whitehead v. Purdy, 172 Mich. 31, 137 N. W. 684. There was no stipulation that if the contract were cancelled the notes would be cancelled also. There is no restraint upon the right of the payee to negotiate the note according to its tenor. We are satisfied that the plaintiff is a good faith holder of the note in suit and should be permitted to recover thereon.

It is also suggested in argument that the plaintiff did not pay value for the note because it issued a certificate of deposit in payment therefor. This contention cannot be sustained. Issuing a negotiable certificate of deposit is parting with value, within the provisions of § 6937, subd. 3, especially when the certificate of deposit has been negotiated to a holder in due course and has been subsequently paid. Elmore County Bank v. Avant, 189 Ala. 418, 66 So. 509. See also National Bank v. Armbruster, 42 Okla. 656, 142 Pac. 393.

While the witness McHose was on the witness stand, counsel for defendant sought to cross-examine him with reference to the conversation with Mr. More, the cashier of the plaintiff, to which Mr. More had testified. Counsel for the plaintiff had not examined Mr. McHose with reference to this conversation and it was not referred to in the examination in chief. Counsel for plaintiff objected to this examination upon the ground that it was improper cross-examination, the subject matter not having been opened or touched upon in the examination in chief. The court sustained the objection. The ruling was proper. 40 Cyc. 2501, ff.

Error is also predicated upon the rulings of the trial court refusing to permit the defendant to show that he had talked with the cashier of the plaintiff and advised him, in substance, of the contents of the contract, Defendant's Exhibit 100. In view of our conclusion that the delivery of the note was not conditional and its negotiation was not in violation of the contract, this ruling was correct. The error alleged because the court rejected defendant's offer of proof, in substance, fol-

lowing the allegations of the answer, is likewise disposed of by our decision upon the interpretation of the contract and the right of the payee in the note to negotiate the same.

Appellant contends that the court erroneously instructed the jury in several particulars. Error is first claimed because the court told the jury, in substance, that even if the agent, William Crowley, did not have authority to negotiate the note, nevertheless, if the company knowingly received the proceeds from the bank, that would amount to a ratification and the plaintiff would be entitled to recover. This instruction is correct. The Grain Belt Mfg. Co. had the power to authorize Crowley to transfer by endorsement its bills receivable; having this power, it could undoubtedly, with knowledge of the facts, ratify any unauthorized transfers. This is an elementary rule in the law of agency.

Error is alleged upon an instruction, in substance to the effect that, if the jury found, by a fair preponderance of the evidence, that the defendant executed the note in suit and delivered it to the payee therein named, and the payee thereafter transferred it to the plaintiff for value, and the plaintiff was still the owner and holder of it, and no part of it had been paid, that then the verdict should be for the plaintiff. Under the facts in the case, there being no evidence tending to prove a valid defense, the instruction was correct.

Counsel complains of the following part of the instructions: "I say to you further, members of the jury, as this case has developed, and under the law as the court sees it, we are not concerned as to the ownership of this note, with the amount of money that may have been paid for it; that is a matter that under the law of this case we have nothing to do with; we are simply to determine if the note was sold and purchased as claimed, and if the plaintiff is the owner and holder thereof and the note was paid for and the Grain Belt Manufacturing Company, the payee of the note, received the proceeds thereof, then the verdict should be for the plaintiff." Appellant insists that the court in effect told the jury that they were not concerned with the ownership, that is, the title of the note. Counsel for appellant, at the trial, sought upon cross-examination to show that the plaintiff had purchased the note at a discount, which appears to have been 2 per cent. What the court undoubtedly meant to say to the jury was that, under the facts in the case, the amount paid for the note, that is to say, the face value, less

2 per cent, had no bearing upon any issue of fact before the jury. We do not think the jury were misled by the instruction. Moreover, there was no testimony in the record tending to contradict the testimony of plaintiff's witnesses, More and McHose, that the note was purchased by the plaintiff for value and that the plaintiff was still the owner and holder thereof; the testimony as to the title of the plaintiff was wholly uncontradicted.

Finding no error in the record, the judgment of the trial court is affirmed with costs.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.