# EMBDEN STATE BANK, Respondent, v. PATRICK J. BOYLE, Appellant.

## (196 N. W. 820.)

**Assignment of certain errors held without merit.**

1. Certain errors alleged by appellant considered and held without merit within the rules applied in First Nat. Bank v. Wallace, ante, 330, and Embden State Bank v. Shea, ante, 455, decided at this term, which involved substantially identical transactions.

**Evidence — parol evidence that words of ordinary meaning used in unambiguous contract, in different sense, inadmissible.**

2. When a contract is not ambiguous, is in words of ordinary meaning, and the court needs no aid in the interpretation of the language used, it is not competent for the parties to show by parol evidence that such words were used in some other sense.

**Contracts — law that several contracts parts of one transaction, taken together, establishes merely rule of interpretation.**

3. Section 5902, Comp. Laws, 1913, establishes merely a rule of interpretation.

**Appeal and error — fact that no verdict directed or returned after stipulation of counsel to waive jury and to submit to court, not ground for new trial.**

4. For reasons stated in the opinion, it is held, that the verdict of the jury and findings of fact by the court were waived by counsel for both parties, and the court properly understood the stipulation of counsel to authorize the court to order the entry of judgment as if a verdict had in fact been rendered by the jury in favor of the plaintiff, pursuant to a peremptory instruction from the court.

Opinion filed November 17, 1923.    Rehearing denied January 25, 1924.

Agency, 2 C. J. § 726 p. 952 n. 65.    Appeal and Error, 4 C. J. § 2981 p. 999 n. 14; 3008 p. 1023 n. 48 New.    Bills and Notes, 8 C. J. § 336 p. 205 n. 9.    Contracts, 13 C. J. § 487 p. 528 n. 50; 969 p. 771 n. 56.    Evidence, 22 C. J. § 1574 p. 1181 n. 65; 1606 p. 1208 n. 19.    Payment, 30 Cyc. p. 1199 n. 39.    Price, 31 Cyc. p. 1171 n. 25.

Note.—Admissibility of parol evidence to give limited meaning to words used in contract, see 10 R. C. L. 1065, 1070; 4 R. C. L. Supp. 689.

Action on a promissory note. Judgment for plaintiff.

Appeal from the District Court of Cass County, North Dakota, *Cole,* J.

Affirmed.

*Divet, Holt, Frame & Thorpe,* for appellant.

When instruments are executed at the same time, for the same purpose, and in the course of the same transaction, they are to be considered as one instrument, and are to be read and construed together as such. So it is well settled that a bill or note, and a contemporaneous written instrument intended to control the bill or note made by the same persons, may be read and construed together as if one in form. 3 R. C. L. p. 870; Collins v. Schafer (Colo.) 179 Pac. 152.

In accordance with this principle, notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract in a controversy between the original parties to the instrument or *persons standing in their situation or chargeable with notice of the contemporaneous instrument.* 8 C. J. § 27 and cases cited.

The situation between the parties with notice is the same as if the note was non-negotiable. National City Bank v. Kirk (Ind.) 134 N. E. 772; Pineland Realty Co. v. Clements (La.) 88 So. 818; Fox v. Merks (La.) 88 So. 784; Bank v. Cook (Iowa) 100 N. W. 72; Roblee v. Bank (Neb.) 95 N. W. 61.

The extraneous circumstances are resorted to only for the purpose of correctly understanding the meaning of the parties who used words of doubtful significance. Roberts v. Short, 1 Tex. 375; King v. Merriman, 38 Minn. 47, 35 N. W. 570; Cox v. Rust (Tex.) 29 S. W. 807; Gallagher v. Black, 2 Mc. 99.

If the previous negotiations make it manifest in what sense the parties understood and used the ambiguous terms in the contract, they may be resorted to, and indeed they furnish the best definition to be applied in ascertaining the intention of the parties. 1 Enc. Ev. 837; Stoops v. Smith, 100 Mass. 63; Keller v. Webb, 125 Mass. 88; Quarry Co. v. Clements, 38 Ohio St. 587.

It is proper to receive evidence of declarations of the parties tending to show what they understood the ambiguous term or expression to mean. Re Castle (Conn.) 30 Atl. 769; Coates v. Sulau, 46 Kan.

341, 26 Pac. 720; Jenkinson v. Monroe (Mich.) 28 N. W. 663; Auttman v. Clifford (Minn.) 56 N. W. 593; Ganson v. Madigan (Wis.) 29 N. W. 230; Hazelton etc. Co. v. Co. 4 N. D. 365.

One of the essential requisites of a judgment is that it be based upon either the findings of the court, a special verdict upon all the issues presented by the pleadings, or by a general verdict finding upon all the issues. Taylor v. Vandenberg (S. D.) 90 N. W. 142.

*Fowler, Green & Wallam,* for respondent.

Further, the fact of the endorsement being an independent fact to be proved, plaintiff had the right, as above stated, to introduce any testimony properly a part of the res gestæ, and under the definition of res gestæ found at 10 R. C. L. p. 974.

Res gestæ may be broadly defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speaking through the instinctive words and acts of the participants; the circumstances, facts and declarations which, grown out of the main fact, are contemporaneous with it and serve to illustrate its character. Moore v. Machen (Mich.) 82 N. W. 892; Bank v. Brill (Neb.) 56 N. W. 382; Fritz v. Chicago Grain Elev. Co. (Ia.) 114 N. W. 193.

There can be no question under the authorities, the bank having issued its negotiable certificate of deposit, an obligation of the bank, in payment for the note in question that it parted with a valuable consideration sufficient to entitle it to protection under the Negotiable Instruments Act. 8 C. J. 481, 482.

It is respondent's contention that the contract referred to merely contains a personal covenant on the part of the Grain Belt Manufacturing Company to pay to the defendant, in case of cancellation of the contract, the purchase price of the shares referred to in the contract. Practically equivalent language was considered by the Supreme Court of Oklahoma in the case of Farmers Bank v. Nichols, 25 Okla. 547, 106 Pac. 834; 36 Fed. 976.

JOHNSON, J. Defendant appeals from a judgment entered in the district court of Cass county. This case involves a transaction in all

respects similar to and in some respects identical with that involved in First Nat. Bank v. Wallace, ante, 330, 196 N. W. 303, and Embden State Bank v. Shea, ante, 455, 196 N. W. 307, decided at this term. It is not necessary to state the facts in detail, except as the contentions of the parties are considered.

In general, the appellant attacks the judgment upon the following grounds, among others: (1) That the evidence was insufficient to establish that the agent Crowley had authority to endorse the note; (2) that the conversation with the president of the payee, the Grain Belt Manufacturing Company, had by the cashier of the plaintiff over the telephone, with reference to the authority of the agent, was hearsay, and, therefore, improperly admitted for the purpose of proving such authority; (3) that the note in suit, the certificate of deposit issued in payment thereof, and a copy of the written authority of the agent Crowley were improperly admitted in evidence and that insufficient foundation was laid by the plaintiff for the admission thereof, and (4) that the trial court improperly limited counsel for the appellant in his cross-examination of plaintiff's witnesses, when he sought to inquire into matters not touched upon in the examination in chief.

We do not deem it necessary to state the evidence in detail as it appears in the record, bearing upon each one of the foregoing questions raised on this appeal. It is sufficient to say that the evidence was substantially the same in the case at bar as in the two cases cited. The questions here raised came up in those two cases under circumstances so nearly identical that our conclusions therein are controlling upon this appeal. In the cases cited, we held contrary to appellant's contention upon all of these points and there are no facts and we are referred to no authorities which seem to require a different decision.

In the case at bar, the answer of the defendant is somewhat different from that interposed in either of the cases cited above. In the case at bar, the defendant admits the "making, execution and delivery" of the promissory note in suit. It is then alleged that, at the time the note was made and delivered to the Grain Belt Mfg. Co., the payee therein, a contract was entered into, which is alleged in hæc verba in the answer and is identical with the contract identified in the cases cited, as Defendant's Exhibit 100; that the part of the contract, quoted in full in First Nat. Bank v. Wallace, and which provides for

the cancellation of the contract and the refund of the purchase price is "vague, uncertain and ambiguous and fails to set forth clearly the exact time within which notice of cancellation thereof should be given;" that the contract meant and was agreed to mean that it might be cancelled at any time before the expiration of one year and that, in the event of cancellation, "everything of value" received under the contract would be surrendered to the defendant. It is then alleged that the contract was cancelled within a year from the making thereof by written notice to the payee and that the defendant demanded that the note in suit be returned to him, but that the payee refused to return the note or to recognize the right of cancellation. It is then alleged that the respondent took the note in suit "with full knowledge of the existence of the contract aforesaid and of the right of the defendant to cancel said contract and receive back the note." There is no allegation or offer of proof that the contract was cancelled prior to the purchase of the note by the plaintiff and that it had knowledge of such cancellation when it purchased the same. The defendant and appellant, therefore, relies upon the assumed duty on the part of the payee under the contract to return the note in the event of cancellation, and upon the further fact that this duty, and the contract upon which the claim of duty is predicated, were fully known to the plaintiff herein at and prior to the time when the plaintiff acquired the note. We held, in First Nat. Bank v. Wallace, and Embden State Bank v. Shea, supra, that the contract did not require the return of the identical note in the event of cancellation of the contract, but that the obligation thereunder was fully performed by repayment by the payee of the purchase price, to the maker of the note, to-wit, the face value of the note. It follows that the answer, insofar as it relies upon the failure to return the identical note as a defense, fails to state facts sufficient to constitute a defense against the note, even in the hands of an endorser with knowledge of the facts. First Nat. Bank v. Wallace, supra.

The contract provides that the Grain Belt Manufacturing Company shall "refund . . . the purchase price." It does not say that the note, which is the evidence of the promise of the other party to the contract to pay the purchase price, shall be returned. In common parlance, "price" or "purchase price" is understood to mean "money," altho this is not always so. Schrandt v. Young, 62 Neb. 254, 86 N. W.

50 N. D.—37.

1089. When the stock was delivered to the defendant and he had, under the contract, received the exclusive agency in specified territory, a debt came into existence, which he owed to the Grain Belt Manufacturing Company. A note was executed by him in an amount equal to that of the debt. It cannot be presumed, in the absence of evidence, that the note was accepted in payment of the debt. After the maturity and nonpayment of the note, the Grain Belt Manufacturing Company might, in some circumstances, have maintained an action on the debt and ignored the note. See State ex rel. Olson v. Royal Indemnity Co. 44 N. D. 550, 175 N. W. 625. The fact that the creation of the debt was contemporaneous with the making of the note is not material, according to many authorities. 22 Am. & Eng. Enc. Law, 558; 30 Cyc. 1199. It is not necessary now to discuss or draw distinctions, if any can properly be drawn, between a debt previously existing and one contemporaneously created. There is no evidence or offer of proof in the record and no allegation in the pleadings that there was an express intention or understanding that the note should be received in payment of the debt. We are unable to see any merit in the contention that an agreement to refund the purchase price can be construed as an agreement to return the identical note made and delivered at the time the debt was created.

At the trial, the defendant sought to amend his answer by adding thereto allegations that, when the note and contract were signed, it was agreed and understood, between the agent of the Grain Belt Manufacturing Company and the defendant, that the contract meant and was intended to mean that, in the event of cancellation, the identical note would be returned to the defendant; that the plaintiff herein took part in the transaction which led up to the execution of the contract and the note in suit, knew all the facts and circumstances, was acquainted with the fact that the parties agreed and understood that the contract meant that the identical note must be returned in the event of cancellation, and that the plaintiff knew all these facts before it purchased the note upon which this suit is brought. Counsel for the plaintiff objected to the amendment and stated that it took him by surprise and offered to file affidavits to that effect. The court refused to permit the amendment. Thereafter, the defendant offered proof substantially following the allegations in the proposed amendment

to his answer, but the offers, upon objection, were rejected by the trial court.

Error is alleged, in general, upon the refusal of the court to admit the offers of proof and the judgment entered against defendant.

If the agreement was that the payee in the note should not negotiate the same until the period within which the contract could be cancelled had expired and that in the event of cancellation, the identical note should be returned, it follows that the plaintiff cannot recover, if, as is stated in the offer of proof, it had knowledge of these facts. The note was then clearly negotiated under circumstances amounting to a legal fraud upon the maker, that is, in breach of faith, and the title of the payee would be defective within the meaning of § 6940, Comp. Laws, 1913, and plaintiff would not be a holder in due course. Comp. Laws, 1913, § 6944. That is to say, if the note was conditionally delivered and if the condition was not performed or fulfilled, and this was known to the plaintiff, it, of course, is not a holder in due course and the same defenses lie against it as against the original payee, were it suing to recover on the instrument. First Nat. Bank v. Wallace, ante, 330, 196 N. W. 303. While it is extremely doubtful whether the defendant could properly introduce the evidence outlined in his offer, under the allegations of his unamended answer, we shall assume that the offer of proof was within the issues as originally framed.

The appellant, in substance, contends, first, that the contract and the note were contemporaneously made, were a part of the same transaction and that the two must be construed and given effect together. That is, he contends that the "contract controls the note" and that the result is the same, as between the parties and others taking with notice, as if the terms of the contract had been written in the note. In the second place, the defendant offered to prove that the contract was ambiguous and, therefore, claimed the further right to prove the interpretation which the parties themselves put upon the agreement; that, in other words, inasmuch as the contract is ambiguous, the circumstances surrounding its execution and the agreed interpretation of the parties as to its terms, were competent evidence. It is then asserted that the ambiguity in the contract arises largely because it does not definitely say whether the notice of cancellation must be given ninety days or more before the expiration of the year, or whether the contract

may be cancelled by giving notice at any time within one year and that thereafter the parties will have 90 days in which to return the consideration. In view of this ambiguity it is contended that extraneous facts, bearing upon the agreed and understood interpretation of the contract, should have been admitted.

While the ambiguity insisted upon by counsel for the appellant pertains largely to the question of proper notice and time of cancellation, we shall assume that the contention as to ambiguity to which he refers in his offer of proof, applies also to the terms providing for the refund of the purchase price and that the appellant further contends that the parties understood and agreed that by the phrase "refund of the purchase price" was meant a return of the identical note. A complete answer to the contention of the appellant is that the contract in this respect is not ambiguous; the court needs no aid in the interpretation of the language used; it clearly provides for a refund of the purchase price and not for a return of the note given at the time of the execution of the contract. The contract is in words of ordinary meaning and appellant cannot show that such terms were used in some other sense. Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803; Comp. Laws 1913, § 5904; 22 C. J. 1180, 1181, 1208; 13 C. J. 771. As pointed out heretofore, a debt was created and evidence of such debt, with promise to pay it at a specified time, in the form of a promissory note, was delivered to the Grain Belt Manufacturing Company. Evidence that the agent of the payee and the maker agreed upon some different interpretation is wholly incompetent, within the rule which excludes parol evidence, when its effect is to vary the terms of written instruments. Nor does appellant bring himself within any exception to that rule. If the theory of the appellant be sound, it would be competent for him to prove that the parties intended that, in the event of cancellation, the payee must return the cash consideration, or the note delivered, or any form of property in specie, like Liberty bonds, stock in a corporation, or the like. That such evidence could not be received without doing violence to well established rules, is too clear for argument.

We are of the opinion that the contract is not ambiguous; that it requires the payee in the note to refund the purchase price in the event of cancellation, but does not contemplate a return of the note; that the note was not negotiated in breach of faith; and that a collateral agree-

ment that a note shall not be paid if an executory contract forming the consideration thereof is not performed, does not affect the rights of an indorsee with notice of the agreement so as to deprive him of the character of a holder in due course, unless a breach of the agreement has occurred and he knows of such breach at the time of his purchase. First Nat. Bank v. Wallace, supra; Embden State Bank v. Shea, ante, 455, 196 N. W. 307. There is no offer of proof as to when the cancellation took place or whether plaintiff knew that the contract had been cancelled when it purchased the note. The defendant wholly failed to offer competent evidence sufficient to rebut the presumption that the plaintiff was a holder in due course, within the rule of First Nat. Bank v. Wallace, supra, and the statutes therein cited.

Counsel argues strenuously that the note and the contract must be construed together and that the contract controls the note; he then insists that the contract is ambiguous and offers to introduce testimony showing the interpretation of the contract by the parties at the time it was made. Having held that the contract is not ambiguous, it is not necessary to notice further the contention that the two instruments must be construed together, or that one controls the other. In passing, it may be pointed out that § 5902, Comp. Laws 1913, cited by appellant in this connection, merely establishes a rule of interpretation. First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867. It does not destroy the separate identity of the note and the contract. The contract does not refer to the note; it speaks of a purchase price. The note does not refer to the contract. We do not however, consider this matter further because of the conclusion we have arrived at as to the correct interpretation of the agreement, Exhibit 100, and for the further reason that we are satisfied that it is free from ambiguity.

The last assignment that requires notice is based upon the alleged absence of either findings or a verdict of a jury as a foundation for the judgment. After both sides rested, the plaintiff made a motion for a directed verdict in its favor. This motion was resisted by defendant. Thereupon, the following colloquy took place:

The Court: Then I suppose under the law we will have to send it to the jury; but I suppose the defense could waive the jury if they wanted to and let the court decide it. That would save time.

Mr. Thorp: We have perfect confidence in the court although we don't agree with him.

The Court: To save time?

Mr. Thorp: I don't think we would be waiving anything either but we don't want the record balled-up to our disadvantage.

The Court: Simply waiving the jury and submitting it to the court?

Mr. Thorp: We will waive the jury and submit the matter to the court provided that we are considered to be on appeal in the same position as though it had actually gone to the jury and a jury had rendered a verdict.

Mr. Green: That is the understanding and the agreement that if the jury is waived and it is submitted to the court the defendant will stand in the same position as though submitted to the jury and a verdict actually rendered.

The Court: I think I will direct the jury to enter judgment in favor of the plaintiff; and a stay of thirty days is granted and if during that time the defendant takes action to make a motion for a new trial or to take an appeal a further stay will be granted.

No verdict was in fact directed or returned and no findings of fact were made by the trial court. It is now claimed by the appellant that a new trial should be ordered on this ground. We cannot assent to that proposition. We think the record fairly justifies the inference that the trial court assumed from what took place at the conclusion of the trial, that both parties agreed that the case might be considered as if a verdict had in fact been returned in favor of plaintiff, pursuant to a peremptory direction by the court. It is evident from the concluding statement of the trial court, that such was his purpose, and we think that such was his understanding of the stipulation of the parties. The order for judgment accordingly assumed the existence of a verdict in plaintiff's favor. This is a question of procedure and in no manner affects the merits of the controversy. The defendant either introduced all the testimony he had or made formal offers of proof thereof.

The judgment is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.