[No. 3961.    Decided April 28, 1902.]

DANIEL McNAMARA, *Respondent,* v. ALFRED JOSE, *Appellant.*

BILLS AND NOTES — BAD FAITH OF PURCHASER — INSUFFICIENCY OF EVIDENCE.

Bad faith on the part of the purchaser of a promissory note against which the maker had a valid defense is not shown by evidence that it was purchased at a heavy discount, without inquiry of the maker, whom the purchaser knew to be perfectly

solvent, when it appears that inquiry was made of the payee as to the consideration for the note; that the payee was in need of money; that the note, though held at the time in this state, was payable at Cape Nome, Alaska, of whose inaccessibility for half the year the court would take judicial notice; and that the note was purchased three months before maturity without notice of any infirmity in the instrument.

SAME — PURCHASE AT DISCOUNT — AMOUNT OF RECOVERY.

Under Laws 1899, p. 350, § 57, which provides that the holder of a negotiable instrument may enforce payment for the full amount against all parties liable thereon, recovery upon a promissory note by the purchaser thereof is not limited to the amount paid for the note.

Appeal from Superior Court, King County.—Hon. George Meade Emory, Judge. Affirmed.

*John E. Humphries* and *Harrison Bostwick,* for appellant.

*William Parmerlee,* for respondent.

The opinion of the court was delivered by

Fullerton, J.—The respondent brought this action against the appellant and one Thomas Carstens to recover upon a promissory note of which the following is a copy:
"$1,000.                    Seattle, Wash., Dec. 28th, 1899.

On or before July 1, 1900, after date, (without grace) I promise to pay to the order of James Daly, one thousand dollars, for value received, payable only in United States gold coin.

Payable at Cape Nome.

Jose & Carstens,
Per Alfred Jose."

He alleged in his complaint that he purchased the note from the James Daly named therein as payee, prior to its maturity, for a valuable consideration, without notice or knowledge of "any defenses or equities, existing in favor of defendants, and against said Daly." The appellant alone

answered. He denied all of the allegations of the complaint, and alleged affirmatively, in substance, that the note was given Daly as part of the purchase price of a certain lot situated in the town of Nome, Alaska, to which Daly had no title, and to which he falsely and fraudulently represented he had title as an inducement to the appellant to purchase the same, all of which was well known to the respondent at the time he purchased the note from Daly. At the trial of the cause the respondent called the appellant as a witness, who testified that he executed the note personally, that Carstens had not authorized him to sign his (Carstens) name thereto, and, while he believed he had authority to so sign it at the time, he did not in fact have such authority. On this being shown, the respondent dismissed as to Carstens, and the action proceeded against the appellant. At the conclusion of the evidence the court took the case from the jury, and directed a judgment to be entered in favor of the respondent against the appellant for the full amount of the note. The errors assigned raise the question of the correctness of this ruling.

From the evidence the jury could well have found that the note was procured by Daly from the appellant through his misrepresentations as to his title to the property deeded as a consideration for the note. It must, therefore, for the purposes of this appeal, be taken as established that the appellant has a defense to the note as against Daly, or against any one taking the note from him with knowledge of its infirmity or defect, "or knowledge of such facts that his action in taking the instrument amounted to bad faith." Session Laws 1899, p. 350, § 56. The circumstances under which the respondent received the note appear from his own testimony. He not only testified in his own behalf, but was called by the appellant, and subjected to a most searching examination. In brief, his story is that he

purchased the note from Daly some three months after its
execution, paying him therefor $470 in cash, and can-
celling an account he held against him of $30, making $500
in all; that he knew both Jose and Carstens at the time,
and knew them to be solvent; that he made no inquiry
other than of Daly as to the consideration for the note; that
he made no inquiry of either Jose or Carstens concerning
it, and had no notice of any infirmity in the
instrument, or that the appellant had published a
warning against its purchase; and that, if he had, he would
not have purchased it. That when Daly first mentioned
the note to him it was in the hands of one Thomas
McCorey, whom Daly said he had bargained it to for $700,
but did not think he had effected a sale, as he did not
believe McCorey could raise the money; that he first asked
him $700 for the note, but finally consented to take the
amount paid; that he noticed the note was payable at
Cape Nome, and he did not think it strange that Daly
would sell the note for $500, "as he was the kind of a
fellow that wanted that much money at that time." While
it was shown that the respondent had a place of business,
the character of that business—whether or not he made it
his business, or a part of his business, to discount com-
mercial paper—does not appear. There is nothing in the
record, however, that questions his repute, and his state-
ments as to the circumstances under which he obtained the
note are not called in question.

The Negotiable Instruments Act of this state (Laws
1899, p. 350, § 52) defines a holder in due course of a
negotiable instrument to be one who has taken the instru-
ment under the following conditions:

"(1) That it is complete and regular upon its face;
(2) that he became the holder of it before it was overdue,
and without notice that it had been previously dishonored,

if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The act further provides (Id. § 56) that, "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith;" and (Id., § 57), that "a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." But, notwithstanding this act positively provides that, to constitute notice of an infirmity in a negotiable instrument, the purchaser must have knowledge of such facts that his action in taking the instrument amounted to bad faith, we cannot think that the legislature meant to say that a purchaser of a negotiable instrument can shut his eyes to the surrounding circumstances, remain in willful ignorance of facts which would have made known to him the infirmities of the instrument he purchases, and then claim, because he had no actual knowledge of such infirmities, that his title thereto is unimpeachable; but that it is still the rule that willful ignorance and guilty knowledge alike involve the result of bad faith. This, however, does not mean that the holder's title is to be overthrown by slight circumstances. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. His rights are to be determined by the simple test of honesty and good faith, not by a speculative inquiry into diligence or

negligence.  Although he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title will prevail.  Crawford, Negotiable Instruments Law (2d ed.), p. 54.

"Suspicion of defect of title or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title.  That result can be produced only by bad faith on his part." *Murray v. Lardner,* 2 Wall. 110.

Tested by these rules, is there anything in the evidence before us, which required the submission of the cause to the jury?  We think not.  Laying aside the fact that it was purchased at such a large discount there is nothing that even tends to show bad faith on the part of the appellant, and this one fact loses much of its persuasiveness when it is remembered that the note is payable at Cape Nome, which the court judicially knows is on the coast of Alaska, inaccessible for a greater portion of the year, and not at any time in the line of regular communication.  It certainly would not ·be sought by investors in commercial paper so long as there was a possibility of their being compelled to enforce its payment at that place.  Again, the purchase'of a note at a discount is not of itself, under ordinary circumstances, evidence of bad faith.  When it is very large, that circumstance may be considered in connection with other circumstances in determining the question of the purchaser's good faith; but unless the consideration be merely nominal, or so grossly inadequate as to lead to the conclusion that the purchase is made for the purpose of speculating upon the chances of collection, it is not of itself sufficient to justify a finding of bad faith.

The appellant makes some question on the order in which the court admitted the proofs. He also contends that the recovery should be limited to the amount the respondent paid for the note. The first, if error at all, could not operate to the prejudice of the appellant, and the second, whatever may have been the former rule, is now settled against his contention by our Negotiable Instruments Act. Laws 1899, p. 350, § 57.

The judgment is affirmed.

REAVIS, C. J., and WHITE, HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.