[No. 13332.   Department One.   November 17, 1916.]

## Citizens Bank & Trust Company, *Appellant*, v. C. B. Limpright *et al.*, *Respondents*.[1]

Bills and Notes—Bona Fide Holder—Duties—Evidence—Suffi-
ciency. There can be no imputation of bad faith from the fact of
taking negotiable paper, fair on its face, without active inquiry, nor
by mere speculation as to diligence or negligence, and evidence go-
ing no further, and showing no actual notice, is insufficient to sus-
tain findings that plaintiff was not a *bona fide* purchaser for value.

Same—Bona Fide Purchaser—Collateral Executory Agreement
—Notice—"Defective" Title. Where defendant gave a note for the
full purchase price of an automobile, with a collateral executory
agreement that the valuation of his old car, traded in at the time,
instead of being then credited, should be applied in part payment of
the note sixty days hence, the plain purpose was to enable the seller
to raise money on the note, and knowledge thereof would not charge
a purchaser with bad faith or make his title "defective" under Rem.
1915 Code, § 3446; since he did not obtain it by fraud, duress, unlaw-
ful means or for illegal consideration nor pledge it in breach of
faith, no breach of the executory agreement having occurred.

Same—Bona Fide Holder—Amount of Recovery—Discount. Un-
der Rem. 1915 Code, § 3418, declaring that, where the holder has a
lien on the instrument, he is deemed a holder for value to the extent
of the lien, a bank taking a note as collateral to a loan for eighty
per cent of its face, can recover from the maker, having a good de-
fense as against the payee, only to the extent of the lien, with inter-
est at the legal rate, in the absence of any evidence as to the rate
of interest agreed upon.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered September 25, 1915, upon
findings in favor of the defendants, dismissing an action upon
a promissory note, tried to the court.   Reversed.

*Sherwood & Mansfield,* for appellant.

*Cooley, Horan & Mulvihill,* for respondents.

Ellis, J.—Plaintiff, claiming to be a *bona fide* holder for
value, brought this action to recover $1,150 as a balance due

[1]Reported in 160 Pac. 1046.

upon a promissory note, together with interest, costs and attorney's fees. The defense was that plaintiff was not a *bona fide* holder for value. Certain facts are not disputed. On February 21, 1914, defendant husband gave to one Pittman, doing business as Riverside Carriage & Auto Company, a negotiable promissory note for $1,600, bearing interest at the rate of eight per cent per annum, and reciting, "$1,150 due April 21, 1914, balance at rate of $100 per month." The circumstances under which the note was given were these: Pittman, as the auto company, sold to defendant an automobile at a price of $1,600, agreeing to take defendant's old car in part payment at a valuation of $1,150, the balance of $450 to be paid in four monthly payments of $100 each and one of $50. The old car was at once delivered to the auto company and the new car to defendant, who received in return for his note the following memorandum of agreement:

"Everett, Wash., 2-21, 1914.

"We hereby agree to allow C. Limpright $1,150 for his 35 Studebaker car, same to be paid and applied on a certain note for $1,600, this is to be applied on sixty days from date on said note of $1,600.     Riverside Carriage & Auto Co.,
"By L. R. Pittman."

On February 26, 1914, the note was transferred by indorsement to plaintiff as collateral to a loan of $1,280. Defendant thereafter made payments on the note as follows: $200 on April 4, 1914, $100 May 5, 1914, $100 June 3, 1914, $50 July 7, 1914. These payments were made to the auto company and were credited on the note by the bank. Two questions of fact are in dispute. Plaintiff's cashier, with whom the transaction was had, testified that, when the note was negotiated at the bank, he had no notice or knowledge of the circumstances under which the note was given nor any notice or knowledge of the collateral agreement, and did not learn of these things till about six months afterwards. Pittman testified that, either at the time of the transfer or soon afterwards, "I told them I had a car to sell and the

proceeds applied on the note in sixty days from the time I accepted the note." He did not testify that he showed to the cashier or any one connected with the bank the collateral agreement, or that he advised any one connected with the bank of the terms of that agreement or even of its existence. The other disputed fact is as to when notice of the negotiation of the note was first given to defendant. Plaintiff's cashier testified that, on February 26, 1914, he wrote to defendant advising him that the bank held the note; that, while he had no independent recollection of the matter, he knew it because that date was stamped on the back of the note, and that it was his universal custom to so stamp the date on sending such notices. Defendant denied ever having received any notice of that date. On October 1, 1914, the cashier wrote defendant as follows:

"Your note to the Riverside Carriage & Auto Company, assigned to this bank, is past due as to several monthly payments of $100 each, and we must therefore urge this matter upon your prompt attention, and oblige."

Defendant testified that this letter conveyed to him the first notice he ever received that the bank held the note. He afterwards admitted, however, that he paid the first installments to one Gay, an employee of the auto company, who then told him he would take the checks to the bank and that he, defendant, then supposed the bank had the note. Pittman, on May 27, 1914, sold the old car for $749.70, took a note in payment and sold this note to plaintiff bank for eighty per cent of its face. There was no evidence that any one connected with the bank had any knowledge or notice that this note represented the proceeds of the old car received by Pittman from defendant. Pittman testified: "I never said a word to them about that."

The cause was tried to the court without a jury. The court found that plaintiff took the note prior to its maturity but with full knowledge and notice of the collateral agreement between defendant and Pittman, and took it subject to

that agreement, and that the note had been paid in full. Judgment was entered dismissing the action with costs to defendants. Plaintiff appealed.

It is contended (1) that the evidence was insufficient to charge appellant with notice or knowledge of the collateral agreement when it took the note; (2) that the collateral agreement being still executory when the note was indorsed, knowledge of its existence could not deprive appellant of its character of *bona fide* indorsee in due course.

The taker of negotiable paper, fair upon its face, does not owe to the party who gives it currency the duty of active inquiry in order to avoid the imputation of bad faith. His rights are to be measured "by the simple test of honesty and good faith," not by mere speculation as to his diligence or negligence. It is not enough to impeach his good faith that he may have been negligent or may have failed to take precautions that a prudent man would have taken. *McNamara v. Jose*, 28 Wash. 461, 68 Pac. 903; *Gray v. Boyle*, 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042; *Scandinavian-American Bank v. Johnston*, 63 Wash. 187, 115 Pac. 102. As we read the evidence, the full purport of which we have set out in our statement, it falls far short of showing knowledge on appellant's part when it took this note of any agreement on Pittman's part to credit upon the note $1,150, or any other sum, as the price of the old car. We shall not further discuss the evidence on this point, since, even were it conceded that appellant had full knowledge of the collateral agreement, that fact would not charge it with bad faith.

If, as between the parties, at the time of the delivery of the old car it was to be considered as an immediate payment of the $1,150, the written agreement to treat it as a payment sixty days from that date would be nugatory and meaningless. That agreement was an executory agreement to apply the $1,150 as the valuation of the old car upon the note, not immediately, but sixty days from that date. It was a contemporaneous agreement to do the thing at a future time

as part of the consideration for the note. The plain purpose of the giving of the note for the full price of the new car without then crediting upon it the $1,150 was to enable Pittman to raise money upon the note. On the face of the transaction no other purpose is conceivable. Moreover, the oral evidence conclusively so shows. Respondent, when asked why it was that he gave the note for the full price of the new car when he turned in the old car said: "He (Pittman) wanted sixty days to turn the old car." Pittman, when asked why he took the note when he already had the old car, answered:

"In the first place we had to pay cash for the cars when we received them, and we either had to pay for the cars or do without them, and we could not sell the cars unless we took paper or did something to negotiate for cash for the cars."

There is not a word of evidence that Pittman agreed not to negotiate the note or that respondent ever asked him not to negotiate it. In giving the note and taking the collateral agreement, respondent clearly relied upon the financial responsibility and integrity of Pittman for the fulfillment of that agreement. *Moyses v. Bell*, 62 Wash. 534, 114 Pac. 193. Such being the necessary purport and purpose of the agreement, Pittman's title to the note was not defective within the meaning of § 55 of the negotiable instruments act (Laws 1899, p. 350; Rem. 1915 Code, § 3446) when he negotiated it. He did not obtain it by fraud, duress or other unlawful means, nor for an illegal consideration, nor did he pledge it in breach of faith, as that was the only conceivable purpose for which it was given. When he pledged it, his collateral agreement to credit the maker with $1,150 was still executory. No failure of consideration for the note had then developed. Appellant took the note as a *bona fide* holder in due course, regardless of any knowledge it may had of the collateral agreement. This court, following preponderant authority, has repeatedly held that knowledge of the indorsee of a note given in consideration of some executory contract or agreement of the payee, which the payee thereafter *fails*

to perform, will not deprive the indorsee of his character of a *bona fide* holder in due course, unless prior to his taking he had notice that the breach of the executory agreement had already occurred. See *Moyses v. Bell, supra,* and the numerous decisions there cited and quoted. See, also, *German American Bank of Seattle v. Wright,* 85 Wash. 460, 148 Pac. 769, a case closely related to this on the facts.

The trial court seems to have been of the opinion that respondent was wholly without fault and that the equities of the case were clearly with him. We cannot so read the evidence. He gave his note to Pittman without any indicia whatever that it was not to be negotiated and without any agreement that it was not to be negotiated. If the note was not to be used, the reasonable thing, the safe thing, and the thing which would have protected all parties absolutely was not to give it. By giving it and taking the collateral agreement, he reposed confidence in Pittman personally and in Pittman alone. To permit that agreement to defeat the note in appellant's hands and for which it had admittedly paid value, would place all of the care and caution touching negotiable paper upon the taker rather than upon the maker, thus reversing the law merchant and the negotiable instruments act and running counter to that cardinal rule of equity that he who makes a loss possible should suffer the loss.

But it does not follow that appellant is entitled to recover the full balance due on the note. The evidence is conclusive that it took the note as collateral to a loan for eighty per cent of its face, or $1,280. The statute, § 27 of the negotiable instruments act, Rem. 1915 Code, § 3418, declares:

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

Appellant has a lien upon the note arising from contract. Under this statute it is to be deemed the holder for value only to the extent of that lien. Appellant failed to offer any evidence as to the rate of interest its loan to Pittman was to

bear.   It therefore can recover interest at the legal rate only. So computing the interest and applying the partial payments made upon the note first to the interest and then to the principal, there remained due to appellant on July 7, 1914, the date of the last payment, a balance of $853.45.   Appellant is entitled to judgment for this amount, with interest from that date at the rate of six per cent per annum, and for an attorney's fee of $50, which respondents in their answer admit to be reasonable.

The judgment is reversed, and the cause is remanded for entry of judgment for appellant and against respondent C. B. Limpright and the community consisting of C. B. Limpright and Josephine Limpright in accordance with this opinion.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.