[No. 18213.   Department One.   January 8, 1924.]

HARVEY MILLS *et al.*, *Respondents,* v. WILLIAM HAYDEN
*et al.*, *Appellants.*[1]

TRUSTS (6, 9)—EXPRESS TRUST—DELIVERY OF CHECKS FOR THIRD
PERSONS—BURDEN OF PROOF. The burden of proving that checks were
held in trust for others rests upon the party asserting it, and the
proof must be clear and satisfactory.

BILLS AND NOTES (64—64-3)—BONA FIDE PURCHASERS—GOOD FAITH
—NOTICE OF DEFECT IN TITLE—EVIDENCE—SUFFICIENCY. A bank is a
holder in due course, where it paid full value for checks made pay-
able to C. and is not charged with notice that the checks were
agreed to be held in trust for the persons whose names appeared
in the lower margin, and to whom C. was indebted for labor in
marketing the drawer's crop; since, under Rem. Comp. Stat., § 3447,
providing that, to constitute notice of an infirmity or defect in title,
there must have been actual knowledge thereof, bad faith, and not
mere suspicious circumstances, must be shown.

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered April 1, 1922,
upon findings in favor of the plaintiffs, in an action
on bank checks, tried to the court.   Affirmed.

*Crollard & Steiner,* for appellants.
*Corbin & Easton,* for respondents.

TOLMAN, J.—Respondents, as plaintiffs, instituted
this action against the defendants to recover upon
eleven bank checks drawn by the defendant William
Hayden to the order of G. A. Clark, each being in the
form of the usual bank check, except that on the margin
of each of the checks there was endorsed on the lower
left-hand corner "For F. Burdick, picker," "Williams,
orchard foreman," "Olive, sorter," and the like, in-
dicating that the check or its proceeds was intended
for the person named in such endorsement.   From a
judgment in favor of the plaintiffs for the aggregate

[1]Reported in 221 Pac. 994.

amount of the several checks, the defendants have appealed.

No exceptions were taken to the trial court's findings of fact, except the one finding the several amounts due, which is conceived to be more of a conclusion of law than a finding of fact, and appellants' attitude here is that the findings of fact do not support the conclusions of law and the judgment.

The findings of fact, following the formal ones as to the co-partnership composed of respondents, and the making, executing and delivery of the several checks, which are set out in full, are as follows:

"That on or about the 16th day of October, 1920, the said G. A. Clark endorsed each of the checks above set forth and delivered each of said checks to the plaintiffs herein and received in return for said checks and each of them cash for the total amount of said checks; That the negotiation of said checks and each of them occurred on Saturday afternoon, subsequent to the closing of banking houses in Wenatchee, Washington, for that day's business, and that on the following business day said checks and each of them were presented to the First National Bank of Wenatchee, Washington, for payment, and that said bank refused to pay said checks and each of them for the reason that payment thereon had been stopped by the maker of said checks.

"That at the time of and prior to the transfer of said checks from Clark to the plaintiffs, there was telephonic communication between the plaintiffs' place of business and the residence of the defendant William Hayden, both in the City of Wenatchee, but that plaintiffs made no inquiry concerning said checks of Hayden or anyone representing him prior to the transfer of the checks to the plaintiffs.

"That on September 23rd, 1920, the defendant William Hayden entered into a contract with the said G. A. Clark, by the terms of which Clark agreed to pick, sort and pack in boxes the crop of apples then

growing in Hayden's orchard, and Hayden agreed to pay Clark for said services the sum of      c. per box (packed), payable weekly, as said boxes were made ready for market; and that Clark employed the persons named on the left-hand lower corner of each of the aforesaid checks to assist him in harvesting said apple crop, but that the plaintiffs had no knowledge at the time of the negotiation of said checks of the existence of said contract.

"That said persons performed work and labor in Hayden's orchard assisting Clark in the performance of the contract aforesaid, and on October 16, 1920, Clark was indebted to the said persons for their work and labor aforesaid in the several sums indicated on the face of said checks.

"That it is the common practice of the plaintiffs to cash checks for workmen after banking hours on Saturdays, and that the said Clark needed funds to pay his employees for their services, and that at the time the checks above described were cashed by the plaintiffs, they were informed by the said Clark that the checks, or the proceeds thereof, were to be used for the payment of said employees, and that the plaintiffs were well acquainted with the defendant William Hayden and cashed said checks, relying on his financial responsibility.

"That the defendant William Hayden drew each of said checks to the said Clark as payee, under an agreement between Clark and said defendant that Clark would deliver said checks to each of the employees named thereon, Clark to endorse each check and deliver it so endorsed to the person for whose bill it was agreed the same should be drawn, but that neither one of the plaintiffs had any knowledge of such agreement at the time of the cashing of such checks; that the defendant William Hayden had previously drawn checks to Clark with similar notations thereon, which checks had been cashed by Clark at other business houses and that said defendant had paid such checks, but that the defendant William Hayden had no actual knowledge of this being done by Clark until after the plaintiffs had cashed the checks above set forth.

"That at the time of the execution of said checks and each of them and the delivery thereof to the said G. A. Clark, the defendant William Hayden suspected his payee Clark of dishonesty and agreed to wait for the said G. A. Clark and take him by automobile directly to the place of employment of the several persons named in the notations on said checks in order that said checks might be delivered to said employees, but that after receiving said checks and each of them, the said G. A. Clark did not return.

"That subsequent to the negotiation of said checks, the said G. A. Clark disappeared without having delivered the proceeds thereof to his employees; and that his whereabouts have since been unknown."

From these findings it is argued and contended:

(1) That Clark held the checks in trust for the persons whose names were written on the margins thereof; that respondents were advised of that fact when the checks were offered to them for sale; and the written memoranda, together with the further facts made known to respondents at the time, put them on inquiry as to Clark's authority to sell the paper; that, had such inquiry been made, respondents would have learned that Clark's only authority was to deliver the checks to the persons whose names were written on their several margins, and that therefore respondents were not holders in due course for want of good faith.

(2) That the findings of fact show that appellant delivered the checks to Clark under an agreement that he would endorse and deliver them to the specifically designated persons; that Clark violated this agreement, which rendered his title defective and cast upon respondents the burden of proving that they were holders in due course.

Considering these questions in the order mentioned, do the findings establish a trust?

"Whether a trust has been perfectly created is largely a question of fact in each case, and the court, in determining the fact, will give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settlor had in view. The burden of proving the existence of a trust rests on the person asserting it, and he must prove it by clear and satisfactory evidence having in view all the surrounding facts and circumstances and the intention of the parties." 26 R. C. L. 1203, § 44.

Applying this rule to the facts found, it seems evident that they fail to establish a trust. *Title Guarantee & Trust Co. v. Haven,* 214 N. Y. 468, 108 N. E. 819; *Wade v. City and County Bank,* 25 Cal. App. 675, 145 Pac. 145. The drawer delivered to Clark the checks in question, which in plain and absolute terms directed the bank upon which they were drawn to "pay to the order of G. A. Clark." Being negotiable instruments, the purchaser in due course might rely upon that absolute direction as establishing that Clark was entitled to receive the proceeds, in the absence of anything to overcome the force of the quoted words. Did the memoranda on the margins negative the direction to pay to Clark or his order? Surely the bank upon which the checks were drawn could not be held bound by such memoranda. 5 R. C. L. 539, § 62; *First Denton National Bank v. Kenney,* 116 Md. 24, 81 Atl. 227, Ann. Cas. 1913B 1337, and note; *Batchelder v. Central National Bank of Boston,* 188 Mass. 25, 73 N. E. 1024; *Eyrich v. Capital State Bank,* 67 Miss. 60. Nor do we think, under the facts here found, that a purchaser in good faith should be held to a higher duty or greater care. The marginal notations and the surrounding circumstances did not in any way negative the order to pay, and at the most but indicated a purpose that a third person should receive the proceeds after the

payment to Clark, thus confirming Clark's right to cash the checks, and showing that the drawer had placed faith in Clark to receive the money and make proper disposition of it. Such is the spirit and effect of the authorities just cited.

If this view be correct, and we are convinced that it is, then the checks were issued and delivered with the intent and purpose that Clark should receive the proceeds, as otherwise they would have been drawn to the order of the particular individuals instead of to the order of Clark. This being so, there were no infirmities in the checks when cashed by the respondents, and no call for proof of good faith on their part in so cashing them. The wrongful act of Clark was in misapplying the cash after it came into his hands, and not in procuring the money on the checks from the respondents. But if the findings as to the want of faith on the part of the drawer in Clark, and as to the private and undisclosed agreement that the checks should be endorsed by Clark and delivered to third persons, be held to control and to destroy Clark's right to cash the checks as between himself and the drawer, still the findings of fact negative bad faith and establish the good faith of respondents, who paid full value under such circumstances as placed them in the shoes of the bank upon which the checks were drawn. The negotiable instruments statute, Rem. Comp. Stat., § 3447 [P. C. § 4127], reads:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Therefore bad faith and not mere suspicious circumstances must be shown. *First National Bank of*

*Ritzville v. Gunning,* 127 Wash. 307, 220 Pac. 793; *National City Bank v. Shelton Electric Co.,* 96 Wash. 74, 164 Pac. 933; *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042. One who executes and sets afloat negotiable paper is chargeable with a much higher degree of diligence and caution than is chargeable to one who purchases in due and regular course. *Vaughn v. Johnson,* 20 Idaho 669, 119 Pac. 879, 37 L. R. A. (N. S.) 816.

We conclude that the findings of fact support the judgment of the trial court, and that judgment is affirmed.

MAIN, C J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.