[No. 26105. *En Banc.* November 18, 1936.]

PEOPLES BANK AND TRUST COMPANY, *Appellant*, v.
L. ROMANO ENGINEERING CORPORATION
*et al., Respondents.*[1]

[1]Reported in 62 P. (2d) 445.

*Philip D. Macbride* and *George W. Williams,* for appellant.

*John J. Kennett,* for respondent.

BLAKE, J.—This is an action on a promissory note executed by defendant L. Romano Engineering Corporation (which will hereinafter be referred to as Romano), and delivered to defendant Ryan (operating as Diesel Equipment Company) as a part of the purchase price of a Diesel engine, sold by the latter to the former. The purchase price of the engine was $2,250. The amount of the note was $1,500. Before maturity, Ryan endorsed and transferred the note to plaintiff for a valuable consideration.

Romano set up two affirmative defenses: (a) That the note was procured by Ryan by means of fraudulent representations, of which the plaintiff was chargeable with knowledge; and (b) that the note had been materially altered after delivery. The cause was tried to a jury, which returned a verdict for Romano. From judgment dismissing the action, plaintiff appeals.

With respect to the first affirmative defense, the essential facts alleged (and supported by Romano's evidence) are as follows: Romano is engaged on a large scale in highway and other construction work of a like character. At the time here involved, it owned a fleet of some fourteen dump trucks, which were used in connection with steam shovel operations. The trucks were all powered by gasoline motors. Early in June, 1934, Ryan got in touch with Romano and sold it on the idea of replacing the gasoline motors in the dump trucks with Diesel engines. In the course of the negotiations, Ryan represented that

". . . this Mono-valve motor was a newly developed machine and that they *were using them all over the United States for dump trucks . . . this en-*

*gine would develop more power than the GL 6 Buda motor that was on the trucks.''*

On June 9, 1934, Romano signed an order for one of the Diesel engines. The order contained the following:

"No warranties of any kind whether express or implied are made by seller with respect to any other products described herein unless endorsed hereon and signed by the parties hereto.''

Notwithstanding this provision, Ryan, on June 13, 1934, wrote a letter to Romano, in which it was stipulated:

"Should it develop that you are not completely satisfied that this unit is suited to your requirements, the Diesel Equipment Company agrees to accept this Model 4-75 engine at list price less the cost of freight and wear and tear over a period of thirty days operation in your Kenworth dump truck. And will perform equally as well as a Buda GL 6 Cyl. gas engine rated at 109 H. P.''

Upon receipt of this letter, Romano executed a note for $1,500, payable in ninety days, and delivered it to Ryan. This note did not provide for interest, it being agreed that the deferred payment should not bear interest. The note was dated June 18th, because it was estimated that Ryan could not deliver the engine before that date.

Sometime prior to the execution of the note, Ryan had told one of appellant's officers about the proposed deal with Romano and had inquired whether appellant would discount the contract. He had been advised that appellant would not discount the contract, but that it would discount Romano's note, if, upon investigation, the latter's financial responsibility proved satisfactory. Ryan took the note of June 18th to the

bank, and the officer with whom he had talked attached to it the following memorandum:

"This is a style used by Wm. F. Ryan, who has had considerable experience in the selling of Diesel Motors. He is a local factory representative of the Diesel Engine Company, Oakland, California, and has been carrying a small account with us. He has just sold an engine to L. Romano Engineering Corporation for $2,250, to be paid $750 on delivery and the balance in a ninety-day note. The writer obtained a favorable report on Romano through the National Bank of Commerce, who advised a net worth of about $200,000, a good current position, and ample cash reserve. After discussing the matter in Committee, Ryan was advised that we would discount the note for him when the transaction is ready for completion. HGG."

The engine did not arrive until some days after June 18th. When it did arrive, the bill of lading with draft attached was sent to appellant by the manufacturer. On June 26th, Ryan and L. Romano, president of Romano, went to the bank to complete the transaction. The bank was represented by Mr. Gruwell, the officer with whom Ryan had previously talked. According to Romano, Gruwell produced the note of June 18th, with his own memorandum, and the letter of June 13th from Ryan to Romano. L. Romano also testified that Ryan, in the presence of Gruwell, repeated the representations heretofore set out.

Gruwell prepared a new note for $1,500, dated June 26th, which L. Romano signed as president of Romano. (This note as set up in the complaint and offered in evidence provided for interest at seven per cent. L. Romano testified that, when executed, the note did not provide for interest; that the provision for interest was afterward inserted without his knowledge or consent and contrary to the terms of his agreement with Ryan.) Ryan endorsed the note and delivered it to

Gruwell. Romano at the same time delivered to Gruwell its check, payable to appellant, for $750—the balance of the purchase price. Appellant thereupon credited Ryan's account with $2,250, and Ryan paid the draft and delivered the engine to Romano.

Appellant has made forty-nine assignments of error. They raise, however, only three questions which merit discussion: (1) Was Romano entitled to a trial by jury? (2) Did the representations constitute actionable fraud? (3) If so, was appellant chargeable with knowledge of the fraud?

*First:* Romano's affirmative defense to the note constituted a cross-complaint against Ryan for the recovery of the $750 cash payment, less $50 for wear and tear on the engine. It is appellant's contention that the affirmative defense and cross-complaint constituted an action for rescission, thus converting the cause into an equity case. In its aspect of an affirmative defense, the answer raised the matter of cancellation of the note merely as an incident to its defense of a law action. Under such circumstances, a defendant is not to be deprived of his right to trial by jury upon motion of a plaintiff who is in court with a strictly law action. *Bain v. Wallace,* 167 Wash. 583, 10 P. (2d) 226.

Viewing the answer as a cross-complaint against Ryan (and conceding only for the sake of argument that appellant could raise the question in this aspect of the case), we do not regard the action as one for rescission. Rather, it is an action to recover money under specific agreement to return the purchase price, less damage for wear and tear, upon failure of the engine to perform as represented.

*Second:* Appellant contends that the representations relied on amount at most to verbal warranties, and, as such, evidence of them was inadmis-

sible, in view of the stipulation in the contract relating to warranties, heretofore quoted. It is, of course, conceded that, under such a stipulation, evidence of express oral warranties is inadmissible. *Eilers Music House v. Oriental Co.,* 69 Wash. 618, 125 Pac. 1023. We think, however, the representations made by Ryan are something different from warranties and something more than "dealer's talk" or expressions of opinion. Certainly, the statement that the Diesel engine was being used all over the United States in dump trucks in connection with steam shovel operations was a representation as to an existing fact.

The representation as to the power and efficiency of the Diesel engine as compared with the Buda GL 6 Cyl. gas engine rated at 109 H. P., might under some circumstances be regarded merely as the expression of an opinion. But, made under the circumstances related here, we think it amounted to a representation of fact. It falls in the category of such representations as were held actionable in *Weller v. Advance-Rumely Thresher Co.,* 160 Wash. 510, 295 Pac. 482.

We understand appellant to contend that, even though the representations were as to existing facts, respondents failed to establish the necessary elements of fraud, as laid down in *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428. From our examination of the record, we are satisfied that respondents made a case for the jury on the issue of fraud in all its elements.

▮ *Third:* Likewise, on the facts established by respondents' evidence, it was for the jury to say whether appellant was chargeable with knowledge of the fraud perpetrated by Ryan. *Johnson County Sav. Bank v. Rapp,* 47 Wash. 30, 91 Pac. 382; *Washington Trust Co. v. Keyes,* 88 Wash. 287, 152 Pac. 1029. If it was so chargeable, the defense of fraud was good

as against it, notwithstanding it acquired the note for a valuable consideration before maturity. *Spokane Security Finance Co. v. DeLano,* 168 Wash. 546, 12 P. (2d) 924.

For the most part, the errors assigned, whether relating to pleadings, admissibility of evidence, instructions given, requests refused, or motions for judgment, have been disposed of by what we have said. We have, however, considered other assignments of error, which do not fall within the range of our discussion, and find them without merit.

Judgment affirmed.

TOLMAN, MAIN, MITCHELL, and BEALS, JJ., concur.

HOLCOMB, J. (dissenting)—I heartily concur with the prevailing opinion upon the first and second propositions discussed therein, and I am glad that the author of the opinion is now persuaded that fraud and misrepresentation may vitiate contracts. This decision, however, is inconsistent with that incorrectly decided in *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428.

As to the third proposition discussed in the majority opinion, some of the material facts in this case are disregarded, as well as general principles of law governing negotiable instruments.

The promissory note sued upon in this case was not "discounted," but was taken by appellant immediately upon its execution, *without discount,* at its face value, and was due ninety days thereafter. True, appellant knew the representations that had been made by Ryan to Romano. There is not a scintilla of evidence, however, that appellant or Gruwell, its officer, had any knowledge whatever that those representations had not been complied with, or that there was any failure of consideration for the note. The record,

therefore, is conclusive that appellant took the note before maturity for value and in good faith.

The cases relied upon by the author of the majority opinion are wholly inapt. The *Rapp* case, 47 Wash. 30, 91 Pac. 382, was one where the opinion showed that the manufacturer of "phony" jewelry, an Iowa corporation, sold almost worthless jewelry in this state by false pretenses. An Iowa bank sued upon certain drafts negotiated by the jewelry company to it. It knew of the nature of the business of the jewelry company and that, as we said, "it was hardly legitimate." It had purchased large quantities of that company's paper and had had a number of lawsuits over them where the defense was failure of consideration. There is nothing in that case akin to the facts in this case. In the *Keyes* case, 88 Wash. 287, 152 Pac. 1029, the purchaser of a note purchased it, as this court declared, with full knowledge that the consideration had failed, which, of course, would render it not a holder in due course for value. The *Delano* case, 168 Wash. 546, 12 P. (2d) 924, merely restates the rule that, if it is shown that a note had been procured by fraud, the burden of proof is then upon the holder to prove good faith. In that case, the holder merely relied upon the presumption of good faith under the statute.

In the present case, appellant paid full value for a note upon its execution, had no knowledge of, and was not, under the law, put upon inquiry that there *might later be,* a failure of consideration.

In *Cross v. Voss,* 132 Wash. 576, 231 Pac. 929, we held that knowledge by the purchaser of a note before maturity that the same was given as the purchase price for property under a warranty, does not affect its status as a holder in due course, where he had no knowledge that there had been any breach of the

warranty, citing *Scandinavian American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907; *Larsen v. Betcher,* 114 Wash. 247, 195 Pac. 27; *Westland v. Post Land Co.,* 115 Wash. 329, 197 Pac. 44; *Banner Meat Co. v. Rieger,* 125 Wash. 142, 215 Pac. 334; *Lovell v. Dotson,* 128 Wash. 669, 223 Pac. 1061.

We there reaffirmed a statement contained in *Moyses v. Bell,* 62 Wash. 534, 114 Pac. 193, as follows:

"The courts have repeatedly held that knowledge by an endorsee of a note that it had been given in consideration of some executory contract or agreement of the payee, which the payee afterwards fails to perform, will not deprive the endorsee of his character of a *bona fide* holder in due course, unless prior to its assignment to him he had notice of the breach of the executory contract, and that such breach had theretofore occurred."

In *Banner Meat Co. v. Rieger, supra,* we said:

"Before the enactment of the negotiable instruments acts in the various states, the prevailing view seems to have been that, if there were any such suspicious circumstances accompanying the transaction as would induce a reasonably prudent man to inquire into the title of the holder or the consideration, he would be bound to make such inquiry. Diligence was made the criterion. But, since the passage of those acts, it is generally held that mere ground for suspicion as to the existence of defenses to the instrument is not equivalent to knowledge thereof by the purchaser, and failure on his part to make such inquiries as a reasonably prudent person would make will not defeat his claim as a purchaser in good faith."

In the case at bar, there is not even a "suspicious circumstance accompanying the transaction," which would have put appellant, or its officer as a reasonably prudent man, to inquire into the consideration

or to ascertain *later* if there had been any failure of consideration.

The prevailing opinion manifestly upsets and confuses the law under our negotiable instruments act, as well as generally.

For these reasons, the judgment should be reversed.

STEINERT, J. (dissenting)—I disagree with the majority in all three propositions discussed in the prevailing opinion.

I. The predominant issue in the case was one of equitable cognizance. Respondent L. Romano Engineering Corporation, in its answer and cross-complaint, sought rescission of the entire transaction. It tendered back the machinery purchased and asked that its note be cancelled and that its advance payment be returned. Except as to the provision for interest, the execution, maturity and nonpayment of the note sued on were conceded. Practically all the evidence revolved about the question as to respondent's right to rescind, and the determination of that question governed the outcome of the case. The right to trial by jury is to be determined by reference to all the pleadings in the case and not merely by reference to the allegations in the complaint. The point under consideration is controlled by *Millett v. Pacific Cider & Vinegar Co.*, 151 Wash. 561, 276 Pac. 863, and *Marion Steam Shovel Co. v. Aukamp*, 172 Wash. 455, 20 P. (2d) 851.

II. The representations relied on as constituting fraud, even though made as quoted in the prevailing opinion, constituted nothing more than mere dealer's talk. In any event, the alleged representation to the effect that mono-valve motors were being used on dump trucks all over the United States and that the particular engine would develop more power than motors

then in use by respondent, amounted to nothing more than that the prospective motor was adapted to the conditions under which respondent expected to use it and that it would perform the particular work. On this point, the case is controlled by *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428.

In addition to what has been said under this heading, it appears from the evidence that, when respondent was finally put to the alternative of accepting or refusing the engine, it planted itself squarely upon the defense of guaranty of performance prescribed in the contract. On August 27, 1936, respondent wrote to Ryan and sent a copy thereof to appellant, stating that Ryan had *guaranteed* that the engine would perform equally as well as a Buda GL 6 gas engine, and demanding that the note and initial payment be returned because of Ryan's failure to comply with the guaranty. On October 1, 1936, respondent's attorney wrote to the appellant referring to the guaranty and its breach and stating that the note would not be paid because of the failure of the guaranty.

The fraudulent representation on which the prevailing opinion is rested was oral. It was not included in the supplementary letter and, of course, was expressly excluded by the terms of the original contract. The prevailing opinion is, of itself, sufficient authority for the rule that a written contract of the kind presented in this case may not be varied by oral agreement. That rule is well settled in this state.

"We have uniformly held that, under such a provision, evidence of express oral warranties is inadmissible. *Eilers Music House v. Oriental Co.*, 69 Wash. 618, 125 Pac. 1023; *Winton Motor Carriage Co. v. Bloomberg*, 84 Wash. 451, 147 Pac. 21; *Western Farquhar Machinery Co. v. Pierce*, 108 Wash. 621, 185 Pac. 570." *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428.

III. I am most concerned over the holding of the majority on the third proposition, because I think that its effect is to emasculate the negotiable instruments law and seriously to cripple the passing of negotiable instruments.

Rem. Rev. Stat., § 3443 [P. C. § 4123], defines "a holder in due course" as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:—

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We are here concerned only with the third and fourth requirements of that section.

Rem. Rev. Stat., § 3447 [P. C. § 4127], provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Thus, a holder in due course is one who has no notice of any infirmity. "Notice" means "actual knowledge of the infirmity" or "knowledge of such facts that his action in taking the instrument amounted to fraud."

The taker of negotiable paper, fair upon its face, is not required to make active inquiry concerning it, in order to avoid the imputation of bad faith. *Citizens Bank & Trust Co. v. Limpright,* 93 Wash. 361, 364, 160 Pac. 1046.

The question in a given case is not whether the taker

of the instrument has made active inquiry, or even whether he has acted as an ordinarily prudent person, but whether he has been guilty of *bad faith,* and, moreover, he is not to be charged with bad faith merely because he may have had a mere suspicion of some infirmity in the instrument. *McNamara v. Jose,* 28 Wash. 461, 68 Pac. 903; *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042; *Scandinavian American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907; *Citizens Bank & Trust Co. v. Limpright,* 93 Wash. 361, 160 Pac. 1046; *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220, 170 Pac. 581; *Keith v. Tsue Chong,* 119 Wash. 507, 205 Pac. 834; *Banner Meat Co. v. Rieger,* 125 Wash. 142, 215 Pac. 334; *First Nat. Bank v. Gunning,* 127 Wash. 307, 220 Pac. 793; *Mills v. Hayden,* 128 Wash. 67, 221 Pac. 994, 34 A. L. R. 1372.

Assuming that the appellant bank had knowledge of the representation made by Ryan, and assuming, further, that the representation was false, there was no evidence that appellant had knowledge, or the slightest suspicion, of its falsity at the time that it took the note. It was in exactly the same position that respondent was. The prevailing opinion results in this anomalous situation: The respondent is held to be acting in good faith, while the appellant is held to be acting in bad faith, in a transaction wherein both occupied exactly the same position with reference to the representation made. This is an inversion of the rule that, when a loss has occurred which must fall upon one of two innocent persons, it must be borne by him who was the occasion of the loss, even though he be without positive fault.

"The basic principle upon which paper having defects, either inherent or collateral, is sustained in the hands of a holder in due course is comprehended in the

maxim that, where a loss has happened which must fall upon one of two innocent persons, it shall be borne by him who is the occasion of the loss. The one who made the wrong possible is estopped by his neglect." *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220, 170 Pac. 581.

Respondent bought the machinery; appellant bought the note. It was the duty of each, so far as the other was concerned, to satisfy itself as to what it was buying. Appellant did so; respondent did not. Having put its note into circulation, respondent was the party, even though innocent, that made the loss possible. Upon it, therefore, the loss should fall.

I think that the judgment should be reversed.

GERAGHTY, J. (dissenting)—Believing that the bank was a holder of the note in due course, I dissent from the majority opinion.

### ON REHEARING.
[*En Banc.* March 5, 1937.]

PER CURIAM.—Upon a rehearing *En Banc* of the above-entitled cause, one of the judges of this court was disqualified, and the cause was therefore heard before the other eight judges. These eight judges being equally divided in their opinions and there being no majority either for affirmance or for reversal, the judgment of the superior court stands affirmed.