[No. 30144. Department One. April 11, 1947.]

AL H. BOWLES, *Respondent*, v. HERMAN BILLIK, *Defendant*, MILTON L. BLUMBERG *et al.*, *Appellants.*[1]

[1]Reported in 178 P. (2d) 954.

*Harrison M. Berkey,* for appellants.

*Clarence C. Dill,* for respondent.

MILLARD, J.—Al H. Bowles operates a business in Spokane under the name of the Bowles Furniture and Home Appliances. Herman Billik, with two partners in New York City, is the active manager of sales by mail of the Nation-Wide Furniture Distributors.

On January 21, 1946, Billik sold to Bowles a carload of secondhand furniture for approximately $3,000, of which $1,280 was paid prior to shipment of the furniture. On January 29, 1946, the First National Bank of Spokane notified Bowles that it had received a sight draft, with bill of lading attached, for $1,618.03, drawn by Billik's firm. Bowles paid the draft and proceeded to open the carload of furniture, when he discovered the furniture was practically worthless and not as it was represented to be by Billik. As soon as Bowles was aware of the condition of the furniture, he brought an action of garnishment against the bank for the amount of money paid for the draft. The garnishee defendant answered that it had in its possession funds in the amount of $1,618.03 belonging to defendant Billik. Defendant Billik made no appearance.

In the early part of January, 1946, Billik, under the name of Nation-Wide Furniture Distributors, requested Milton L. Blumberg, who, with his copartners, is engaged in business in New York City under the name of General Commercial Acceptance Company, to purchase Billik's account. The General Commercial Acceptance Company and Billik entered into an agreement, January 17, 1946, for that purpose. The sight draft drawn by Billik was assigned to the General Commercial Acceptance Company, which advanced to Billik eighty per cent of the invoice price of the goods sold to Bowles, the balance of twenty per cent to be paid to Billik when they collected the amount of the draft. The sight draft was indorsed, in blank, by Nation-Wide

Furniture Distributors. Upon receipt of the sight draft, which was made payable at the First National Bank of Spokane, General Commercial Acceptance Company deposited it at the Bankers Trust Company of New York for collection, and it was forwarded, with the invoices and bill of lading, through regular channels and presented at the First National Bank of Spokane for collection. The draft was indorsed by interveners merely by a stamped number "8160."

Under the assignees' agreement with Billik, the latter was required to reimburse the former for the eighty per cent advanced in case the money could not be collected within fifteen days from the time of presentation of the draft for payment. Instead of securing refund from Billik, Blumberg and his copartners filed a complaint in intervention in this action of garnishment brought by Bowles against Billik and the First National Bank of Spokane. Billik failed to appear in the case, and default judgment was taken against him. Interveners claimed that the money which was paid to the bank by Bowles was their property, and that they were innocent purchasers for value in due course. Plaintiff Bowles, by an affirmative defense and cross-complaint, alleged fraud on the part of defendant Billik, in which fraud he alleged Blumberg *et al.* participated.

The cause was tried to the court, which found the facts to be as recited above and that at no time were the names of the interveners, or any other name, mark or designation, indorsed or written or printed or placed on the draft disclosing that the interveners had any right, title, or interest in the draft; that interveners never, at any time, informed plaintiff of their interest in the draft, and used the number "8160" deliberately to prevent plaintiff from learning that interveners had any interest in the draft. Concluding that the interveners are not bona fide purchasers or holders of the draft, in good faith and without notice of the fraudulent actions of Billik, the court entered judgment in favor of plaintiff. Interveners have appealed.

It is clear, from the evidence, that the stamping of number "8160" only by appellants on the back of the sight draft was for the purpose of aiding Billik in consummation of his

fraudulent transaction by deceiving respondent into thinking the draft had not been sold to a third party. One of the interveners testified that Billik did not desire his customers to know that the sight drafts were being discounted, hence, they made the indorsement by number·instead of in writing.

Billik intended, and appellants knowingly and actively assisted Billik in that purpose, to keep from respondent any knowledge of the sale of the sight draft, for the reason that, if respondent learned of such sale of the sight draft, he would insist on seeing the furniture before paying the draft. As the trial court observed, a man engaged in business like respondent might look at the sight draft and bill of lading, and if he learned, from that examination, that the sight draft had been negotiated, he would refuse to pay any further money and not take up the draft and bill of lading because he would know that, if the goods were not as represented, he would have no recourse against the assignees or indorsees.

■ The holder of a negotiable instrument is presumptively a bona fide holder, but that presumption ends when the title is shown to be defective, and the burden is then on the holder to prove that he is a bona fide holder.

"[Every] holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. . . ." Rem. Rev. Stat., § 3450 [P.P.C. § 758-17].

In *Marsol Credit Co. v. West Coast Grocery Co.*, 191 Wash. 134, 70 P. (2d) 1046, we stated that we had consistently held that proof of fraud between the original parties imposes upon the holder of a negotiable instrument the onus of proof that he is a bona fide holder. It is not enough to show, as in the case at bar, merely that the negotiable paper was purchased under a special agreement. The draft involved herein was one of five drafts bought under such agreement.

"After infirmity in the procurement of a negotiable instrument once appears, its possession is not enough to support a recovery thereon. In such a case, the possessor must affirma-

tively show his freedom from any taint of bad faith." *Marsol Credit Co. v. West Coast Grocery Co., supra.*

The rule is stated as follows:

"In general, it may be noted that the possession of a negotiable instrument is not enough to support a recovery thereon, after infirmity in its procurement once appears, for in such case the possessor must trace title through fraudulent practices and unclean hands. Hence, his freedom from any taint of bad faith must affirmatively appear. Bad faith in a transaction of this kind is based upon a variety of circumstances, some of them slight in character and others of greater significance." 72 A. L. R. 62.

One of the interveners, and the only witness, failed to offer any testimony affirmatively showing the good faith of interveners in this transaction. Billik was the only member of the Nation-Wide Furniture Distributors whom the interveners knew, and he was a complete stranger until shortly prior to the execution of the contract, January 17, 1946, two days prior to the time the draft was drawn. Interveners' only investigation of Billik's business was to consult Dunn & Bradstreet, where they learned that Billik's firm had a credit rating of $20,000 to $35,000.

The interveners used the number "8160" for purposes of indorsement to hide their identity to all other parties. That scheme succeeded with Bowles and also with the Spokane bank which made the collection. This method of indorsement dovetailed perfectly into Billik's plan. Bowles did not, nor did the cashier of the collecting bank, even notice the stamped number "8160" on the back of the draft until after the complaint in intervention was served. Interveners do not carry any account under the number "8160," nor do they sign any checks with the number "8160." It is used only for drafts and other negotiable paper, and it was manifestly used in this case to assist the maker of the draft to deceive the drawee into thinking that the paper had not been sold to interveners. The fact that Billik desired the interveners to use a number instead of the firm name for indorsement of the draft was sufficient to put them on notice that there was something wrong with the paper, and, when

they actually used the number, the interveners participated in Billik's deceit.

■ The defense of fraud is good against one who is chargeable with knowledge of the fraud. *Peoples Bank & Trust Co. v. Romano Engineering Corp.*, 188 Wash. 290, 62 P. (2d) 445.

■ The statute (Rem. Rev. Stat., § 3422 [P.P.C. § 760-3]) requires an indorsement to be in writing. That section reads as follows:

"The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement."

In the absence of a written indorsement, no title passes except that of the transferor.

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." Rem. Rev. Stat., § 3440 [P.P.C. § 760-39].

The stamping of a number is not an indorsement in writing. The number "8160" would have passed title to the $1,618.03, if that money had arrived at the interveners' New York bank, for the reason that that bank had agreed to accept those numbers as a general indorsement by the interveners of their commercial paper for deposit. It was not, however, sufficient, under our statutes, to pass title in this state, as a holder in due course, free from the defenses against the fraudulent maker of the draft. While an indorsement may consist partly of a printed form to be filled in by the indorser, or an indorsement may be made by means of a rubber stamp or a typewriter, it is clear, from a reading of the negotiable instruments law which requires an indorsement to be in writing, and follows necessarily from the defi-

nition of indorsement, that the indorsement must be signed by the indorser.

"Negotiable Instruments Act § 31 expressly provides that the signature of the indorser, without additional words, is a sufficient indorsement, and the purpose of the statute is to exclude parol evidence and to make the written instrument control the rights of the parties. That an indorsement must be in writing follows necessarily from the definition of indorsement. It is not essential that the indorsement should be written with a pen; indorsements in pencil have been held valid. So also an indorsement may consist partly of a printed form to be filled up by the indorser, or an indorsement may be made by means of a rubber stamp or a typewriter. The indorsement must be signed by the indorser." 10 C. J. S. 693, § 208.

The requirement of the negotiable instruments act is that there must be something to disclose to all parties concerned who the indorser is. The stamping merely of the number "8160" across the back of the draft below the ordinary place of indorsement, as was done in the case at bar, does not give information to any one who transmits and collects on it. One who claims to be a holder in due course with title free from the defense of fraud available against the maker of the draft, cannot have numbers, as in the case at bar, held to be in compliance with the requirement of the statute that the indorsement must be in writing.

The whole transaction of Billik with respondent and with the interveners is permeated with fraud. Billik, because of his fraud, could not successfully defend this action. Interveners, with knowledge of Billik's fraud, may not, as his assignees, under cover of a bank identification number "8160" which they denominate their indorsement, with a written guarantee of Billik of the return of the money advanced to him, succeed in this action. The lack of good faith of appellants in the purchase of the sight draft is established by ample evidence. They are not innocent purchasers for value of the sight draft in question.

The judgment is affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and ABEL, JJ., concur.